Nancy WILLIAMS, d/b/a Idlewild Cafe and Lounge, Appellant (Defendant below),

v.

Carl WAUGH and Fay Waugh, Appellees (Plaintiffs below).

No. 4998.

Supreme Court of Wyoming.

April 18, 1979.

Charles R. Spratt, Buffalo, argued, for appellant.

Dan R. Price II, of Morgan & Brorby Law Offices, Gillette, argued, for appellees.

Before RAPER, C. J., McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROONEY, Justice.

Appellees-plaintiffs brought a foreclosure action against appellant-defendant, and appellant-defendant counterclaimed for damages from alleged breach of provisions of the lease. This is an appeal from an order granting appellees-plaintiffs' motion for a summary judgment and dismissing appellant-defendant's counterclaim. Since the summary judgment was predicated on only a portion of the entire agreement between the parties and, therefore, could not have been with full consideration of whether or not a genuine issue existed as to a material fact, and since there exist genuine issues of material facts, the summary judgment was improper, and we will reverse.

On May 16, 1975, the plaintiffs entered into an agreement with the defendant and her husband for the sale of a business known as the Idlewild Cafe and Lounge in Buffalo, Wyoming (hereinafter "basic agreement"), and a lease for the premises. Plaintiffs were sellers and lessors, and defendant and her husband were buyers and lessees. Within the same time frame, defendant and her husband executed a security and financing statement for certain furniture, fixtures, equipment, and kitchen and diningware (hereinafter "first financing statement"), a reassignment of the liquor license, a real estate mortgage on other property owned by defendant and her husband, a promissory note, and an escrow letter. Plaintiffs executed a mortgage release, an assignment of liquor license, an escrow letter, and a bill of sale. The Wyoming Bank and Trust Company was designated escrow agent to hold the basic agreement, the mortgage, the reassignment of the liquor license and the release of mortgage.

Thereafter, defendant and her husband were divorced, and defendant, Nancy Williams, succeeded to the interest of her husband, Don Williams, in the transaction. On March 28, 1977, she executed a security and financing agreement (hereinafter "second financing statement") for the liquor license in favor of plaintiffs.

Between December 23, 1976, and October 26, 1977, various third parties secured seven default judgments in justice of the peace or district courts against defendant or against defendant and her husband. During the summer months of 1977, the Internal Revenue Service filed several tax liens, some against defendant and her husband separately and some against them jointly. On August 17, 1977, Internal Revenue agents took the liquor license from the wall of the cafe and lounge, but replaced it within a day.

The consideration for the basic agreement sale was $93,150. After initial payments, the balance of $90,000 (with interest at 7½%) was to be paid in twenty semi-annual installments. At the time of alleged defaults, the payments were current and the balance due, with interest, was about $61,000. The lease agreement was for a five-year term for $27,000, payable in monthly installments of $450. There is no controversy concerning the foregoing.

In the complaint, plaintiffs alleged default "under the terms of the Security

Agreements and the Agreement for the sale of the business" in that defendant: (1) allowed the tax liens to be filed; (2) sold some of the secured property without prior approval of plaintiffs and without remitting proceeds of sale to plaintiffs; and, (3) "committing other acts" prohibited by the basic agreement and the financing statements. Further, the complaint alleged that plaintiffs deemed themselves to be insecure in the prospect of payment by virtue of the filing of the tax liens and that defendant was notified of default and failed to cure the same within thirty days. Defendant denied these allegations in her answer.

In her counterclaim, defendant alleged failure by plaintiffs to repair the roof of the building as required by the lease, and failure to move an exterior sign as needed for street improvement as required by the lease, all to defendant's damage. The allegations were denied in an answer to the counterclaim.

The trial court found in the summary judgment "that the Plaintiffs are entitled to a judgment foreclosing any and all of Defendant's right, title and interest in * * *EXHIBITS A and B attached to the complaint herein." A and B are the first and second financing statements. With reference to the counterclaim, the trial court found in the summary judgment "that on the counter-claim of Defendant filed herein the Court finds generally for the Plaintiffs and against the Defendant and Defendant is entitled to nothing hereunder."[1]

These findings and the specific reference to exhibits A and B reflect that the court may have based the summary judgment on only part of the contract between the parties. No mention of the basic agreement or lease is made in the summary judgment. The complaint is based on default by defendant of the basic agreement, and it is concerned with the first and second financing statements only insofar as they are supplemental to, and a part of, the basic agreement. The counterclaim is based on the lease.

The basic agreement, the lease and the two security and financing statements (hereinafter entire agreement) are all part of a single transaction. As indicated above, plaintiffs allege in the complaint that the default is under terms "of the Security Agreements *and the agreement for the sale of the business*" by virtue of allowing the tax liens to have been filed "*on the business.*" It alleges the selling of some of the secured property "without prior approval of" plaintiffs, and of "committing other acts prohibited under the terms of the Security Agreement and Financing Statement *and the agreement for the sale of the business.*" The basic agreement was filed with the escrow agent. The two financing statements were not. The escrow papers were released to plaintiffs on the basis of *the basic agreement* as reflected in the escrow letter of May 16, 1978, by plaintiffs' letter of December 12, 1977 requesting such release, and in the letter of September 9, 1977 from the bank specifically referring to paragraph 11 *of the basic agreement* as controlling the default and notice of default. Plaintiffs' attorney stated in his deposition when testifying relative to the execution of the documents that "the documents are all—is one transaction, and they all refer to each other, Mr. Spratt, and they were all part of this agreement." The basic agreement does refer to the first financing statement. It provides that such financing statement "shall be executed * * * for said fixtures and equipment transferred hereunder." The first financing statement also refers to the basic agreement. It provides that it "is executed as security for the balance due pursuant to" the basic agreement. Even the second financing statement states that it is "pursuant to" the basic agreement.

█ The terms of the basic agreement, the two financing agreements and the lease agreement of the parties, i. e., the entire agreement, and the terms thereof, must be

1. This "finding" is in words more usual to a determination after trial than to a summary judgment.

considered in determining whether or not a genuine issue of a material fact exists in this matter.

" * * * Where a written contract refers to another instrument and makes the terms and conditions of the other instrument a part of it, the two will be construed together as the agreement of the parties. Two instruments executed at the same time as one transaction in order to effectuate a single purpose, and each referring to the other, must be considered together. * * * " 17 Am.Jur.2d Contracts, § 263, pp. 666, 667.

We must review the affidavits, depositions and other matters submitted under oath to determine if ultimate facts set forth therein concerning the issues are uncontroverted and make possible a determination of the case as a matter of law. Rule 56(c), W.R.C.P.; *Hunter v. Farmers Insurance Group,* Wyo., 554 P.2d 1239 (1976); *Wood v. Trenchard,* Wyo., 550 P.2d 490 (1976). Such facts must be ultimate facts. An allegation, for example, under oath, to the effect that there was a default, or that there was no default, is insufficient. The acts, or failures to act, which constitute the default, or the performing of acts, or failures to perform acts, reflecting performance and thus no default, must be set forth under oath. *McCamon v. Darnall Realty,* Wyo., 444 P.2d 623 (1968); *Cantonwine v. Fehling,* Wyo., 582 P.2d 592 (1978).

In reviewing an appeal from the granting of a summary judgment and in determining the existence of a genuine issue of material facts, the court must inquire from the viewpoint most favorable to the party opposing the motion. *Timmons v. Reed,* Wyo., 569 P.2d 112 (1977). Facts asserted by such party and supported by affidavits or other evidentiary material must be taken as true, *Trautwein v. Leavey,* Wyo., 472 P.2d 776 (1970), and be given every favorable inference which may be reasonably and fairly drawn from them, *Bluejacket v. Carney,* Wyo., 550 P.2d 494 (1976).

The material to which we can look in this case for these purposes and in these manners are eighteen items filed in this case and in case Civil 5323[2] consisting of plaintiffs' answers to defendant's interrogatories filed February 6, 1978 in this case, depositions of plaintiff, Carl L. Waugh, (defendant there) filed April 20, 1978 in Civil 5323, deposition of William O. Omohundro filed March 16, 1978 in Civil 5323, fifteen affidavits filed in this case and in Civil 5323 in support of motions for summary judgments, for temporary restraining orders, and to dismiss, by parties and potential witnesses in both cases.[3]

The counterclaim is predicated on violation of terms of the lease, which is part of the entire agreement, just as the complaint is based on the entire agreement. The only reference to the counterclaim, or to the facts alleged in it, in any of the eighteen items, supra, are recitations in the affidavits of defendant and of Don Williams, filed

2. In their motion for summary judgment, plaintiffs advised that reliance would be had upon depositions and affidavits filed in case Civil 5323, District Court for Fourth Judicial District, County of Johnson. A supplemental designation of the record here included the depositions and affidavits filed in Civil 5323 and copies of the seven civil actions referred to on page 1, supra, together with a copy of another civil action against defendant Nancy Williams, filed in Justice of the Peace Court in which there was no disposition. Civil 5323 was an action by defendant (plaintiff there) against plaintiffs (defendants there), the city of Buffalo, Wyoming Bank and Trust Company, and William D. Omohundro and Terrance L. O'Brien, for damages alleged to have resulted from the transaction upon which this action is based. The complaint was filed in Civil 5323 on February 6,

1977. Plaintiff in that action (defendant here) received judgment on January 2, 1979 against plaintiffs in this action (defendants there) in the amount of $29,349.00 and she did not recover against the other parties.

3. The parties make reference in their briefs and arguments, and elsewhere, to matters contained in the deposition of defendant (plaintiff there) filed May 15, 1978 in Civil 5323. Although the deposition was taken January 7, 1978, and typed February 12, 1978, it was not signed until April 17, 1978 and not filed until May 15, 1978, three days after the motion for summary judgment was issued by the district judge in this case. Therefore, they did not enter into his consideration of the motion.

March 13, 1978 in Civil 5323, and the deposition of plaintiff, Carl Waugh, filed April 20, 1978 in Civil 5323, to the effect that the roof did leak and that interior damages resulted. There is nothing at all in the record to controvert these allegations made under oath, thus, there is nothing to support the aforementioned finding of the trial court in the summary judgment "that on the counter-claim of Defendant filed herein the Court finds generally for the Plaintiffs and against the Defendant and Defendant is entitled to nothing thereunder." All issues of fact involved in the counterclaim are subject to proof, one way or the other. Therefore, this matter must be returned to the trial court for disposition of the issues raised by the counterclaim.

■ As already noted, the trial court based the summary judgment for plaintiffs on their complaint on only part of the entire agreement. In finding that "Plaintiffs are entitled to the judgment foreclosing any and all of Defendant's right, title and interest in and to the secured property as described in *EXHIBITS A* and *B* attached to the complaint herein," the trial court found (1) the absence of genuine issue as to material facts, and (2) that plaintiffs were entitled to judgment as a matter of law *as the same pertained to only part of the entire agreement* between the parties, i. e., as the same pertained to complaint exhibits A and B.[4] For example, a different result may have been reached as to the fact of default, as to the fact of adequate notice, as to the fact of correction or cure of defaults (if any), or as to the legal question as to whether or not the liquor license was sub-

ject to encumbrance of the nature as here alleged to impairment of the security, if the same were with reference to the entire agreement. From the fact that the trial court granted a summary judgment to plaintiffs on the counterclaim, it is obvious that it did not consider the entire agreement and all verified matters concerning it in making its determination in this case.

We might review the record for these purposes, but it is not a proper appellate function to do so in the first instance. It is a proper appellate function to examine the record to determine if the consideration of the entire agreement is a consideration of an agreement which actually differs substantially from the portion originally considered by the trial court, and not one which only supplies additional matter of immaterial and nonpertinent nature.

In this instance the provisions of the entire agreement are substantially different to a material and pertinent degree. In fact, the basic agreement (also part of the entire agreement) has some provisions which are inconsistent with those of the financing statements (complaint exhibits A and B) in critical areas. For example, the basic agreement provides for a thirty-day period in which to correct a default after notice thereof which is not contained in the financing statements.[5] The basic agreement provides that the defendant "shall not have *the right* to assign, transfer, convey, lease, sublet, mortgage, encumber or in any manner alienate *any of their rights*" (emphasis supplied) in the retail liquor license. There is no provision therein prohibiting the placing of encumbrances, etc., on the

---

4. The basic agreement came before the court as a matter of record as an attachment to an affidavit filed December 13, 1977 in Civil 5323 in support of defendant's (plaintiff there) application for a temporary restraining order. The lease came before the court as a matter of record as an attachment to the affidavit filed April 10, 1978 in Civil 5323 in support of plaintiffs' (defendants there) motion for summary judgment.

5. Without analyzing or reaching a conclusion with reference thereto, we note contentions of correction or cure of defaults in that the default judgments were either satisfied or not executed

upon; the equipment and personal property allegedly removed was either allegedly done so at direction of health officer or allegedly replaced and such was allegedly consented to by plaintiffs (affidavit filed on May 5, 1978 and affidavit filed in Civil 5323 on March 13, 1978); the alleged damage to booths, carpet, tile, etc., were either allegedly repaired or in process of repair (affidavits filed on February 25, 1978 and May 17, 1978 in Civil 5323); and the IRS had allegedly withdra·vn or modified their lien and the license allegedly transferred without lien considerations (affidavits filed on March 13, 1978, and April 7, 1978 in Civil 5323).

other items involved in the sale. In the preprinted provisions of the financing statements the placing of encumbrances, etc., on the liquor license itself and on equipment and other personal property items is prohibited.

These inconsistencies emphasize the error in relying on only the financing statements in making the necessary determinations for a summary judgment, since the provisions of the basic agreement are controlling.

> "The rule is well settled that where part of a contract is written or typed and part is printed, and the written or typed and the printed parts are apparently inconsistent or there is reasonable doubt as to the sense and meaning of the whole, the words in writing or typing will control. * * * *" 17 Am.Jur.2d Contracts, § 271, p. 679.

Accordingly, with reference to the complaint, the predication of the summary judgment on only a portion of the entire agreement was error; and with reference to the counterclaim, the summary judgment was in error inasmuch as there existed genuine issues of material facts.

Reversed and remanded.

ROSE, Justice, concurring in part and dissenting in part.

I concur in the majority's reversal of the trial court's summary judgment in favor of the plaintiffs on the defendant's counterclaim. As I view the record, there are questions of material fact with regard to the counterclaim. I would also agree with certain statements of law made by the majority. I have no quarrel with the conclusion that, in areas of conflict, the provisions of the basic agreement are controlling over those contained in the security agreements.

I am unable to agree, however, that this court can assume that the trial court failed to consider the parties' basic agreement when it rendered summary judgment foreclosing the defendant's interest in property "described in" the security agreements. The plaintiffs claimed in their complaint that the defendant was in default under the security agreements *and* the parties' basic agreement. As the majority notes, the ba-

sic agreement was a part of the record before the trial court. If there is any legal ground in the record to sustain the trial court's judgment, it will be affirmed. *Police Protective Association of Casper v. City of Casper*, Wyo., 575 P.2d 1146, 1148 (1978). By concluding—on a basis which appears speculative at best—that the trial court failed to consider all the documents before it, the majority avoids consideration of a legal ground, presented in and sustained by the record, that would sustain the summary judgment.

One of the plaintiffs' primary grounds for arresting a right of foreclosure was the allegation that the defendant allowed federal tax liens to be filed against the subject property. The questions for this court— had it reached them—are whether there are questions of material fact with respect to this claimed default circumstance, and whether plaintiffs were entitled to judgment, as a matter of law, because of this alleged act of default.

It is undisputed that Paragraph 5 of the parties' basic agreement provides, in pertinent part, that:

> "The Buyers shall not have the right to assign, transfer, convey, lease, sublet, mortgage, encumber or in any way alienate any of their rights in said Retail Liquor License until the entire purchase price hereunder, together with all interest thereon is paid in full."

It is also undisputed that the security agreements, secured by the Retail Liquor License and the business inventory, provide, in Paragraph 7(e)(3), that:

> "The Debtor shall keep the collateral free from all liens, claims, charges, encumbrances, taxes and assessments."

Paragraph 12 of the parties' basic agreement provides:

> "The Buyers shall not assign, transfer, convey, lease, let, mortgage, encumber, option or in any manner alienate any of their rights, duties or obligations hereunder without first obtaining the written consent of the Sellers."

Defendant admitted in affidavits that tax liens had been filed against her, but asserted that she had made an agreement with the Internal Revenue Service to send them regular payments. (Williams affidavits, dated December 13, 1977, and January 23, 1978). Defendant further admitted that she received notice, that the plaintiffs considered these filings as constituting a default under the terms of the parties' basic agreement, on or about September 11, 1977 (Williams affidavit, January 23, 1977; See, letter at R. 51–52).

It is undisputed that according to Paragraph 11 of the parties' basic agreement: " . . . if such default is not corrected within thirty (30) days upon the mailing of said notice, the Sellers shall have the right, at any time thereafter, to terminate and cancel all rights of the Buyers under this Agreement. . . . " In a letter dated October 12, 1977, plaintiffs demanded that the escrow agent turn over the escrowed documents.

Under these undisputed facts it is clear to me that the defendant permitted tax liens to be filed—affecting property covered by the various agreements—and that she failed to cure this alleged default within the time specified under the parties' basic agreement. There are no questions of material fact in this regard. The only question is one of law: whether the defendant's allowing of tax liens to be filed against her and, therefore, the subject property, constituted a default under the parties' basic agreement.

The federal tax statutes—pursuant to which these liens were filed—provide that the amount of tax due, including interest and other costs, "shall be a lien . . . upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C., § 6321. There is no question but that the defendant had a right under the parties' basic agreement, to the business inventory and to the retail liquor license. While there may be questions of priority with regard to the various encumbrances on this property—questions which are not presented in this suit—it is, never-

theless, clear that the federal tax liens represented encumbrances, at a minimum, on the business inventory in violation of Paragraph 12 of the parties' basic agreement. Defendant's only response throughout these proceedings is that "the tax liens were being paid." (Appellant's brief, p. 7) Whether the liens were being paid or not does not change the fact that they existed and their existence constituted a violation of the parties' agreement. Plaintiffs gave sufficient notice of the default and were, therefore, entitled to declare a forfeiture under the parties' basic agreement. See, *Angus Hunt Ranch, Inc. v. REB, Inc.*, Wyo., 577 P.2d 645 (1978).

As a last resort, defendant asserts that the tax liens could not have affected the plaintiffs' security interest in the retail liquor license because § 12–2–110, W.S.1977 [now § 12–4–601(d), W.S.1977, 1978 Repl.] indicates that a liquor license shall not be subject to attachment, garnishment, or execution. First, this argument ignores the effect of the liens on the business inventory—which I presume, arguendo, would clearly be subject to execution. Second, I am not at all convinced that a federal tax lien cannot attach to a retail liquor license in Wyoming, thereby potentially effecting a security interest therein.

Following the lead of the decision in *Bogus v. American National Bank of Cheyenne*, 10 Cir., 401 F.2d 458 (1968), this court has embraced the concept that a retail liquor license is an article of property with definite economic value as between the licensee and a third party. *Johnson v. Smith*, Wyo., 455 P.2d 244, 250–251 (1969). See, Note, 5 Land & Water L.Rev. 213 (1970). As indicated by these two cases—and by the parties' basic agreement in the present case—a liquor license is property in which a security interest can be perfected. Under the *Bogus* decision this security interest attaches to the proceeds of a sale or transfer of the liquor license—even though the liquor control authorities retain control over the conditions of such a transfer. See, gen., *Gibson v. Alaska Alcoholic Beverage Control Board* (D.Alaska) 377 F.Supp. 151

(1974); *C. Y., Inc. v. Brown*, Alaska, 574 P.2d 1274 (1978); and *Queen of the North, Inc. v. LeGrue*, Alaska, 582 P.2d 144 (1978).

The only decision I could find dealing with whether a federal tax lien can be asserted against a liquor license, held that it could not be so asserted. *In re Roberts* (D.S.D.) 358 F.Supp. 392 (1973). This conclusion was premised on the view of South Dakota law that a liquor license was nothing more than a personal privilege, and that it vested no property rights in a liquor licensee which could be considered "property" within 26 U.S.C.S., § 6321. It is readily apparent to me that this court has found Wyoming law to be entirely different. I would reason that if a liquor license, in Wyoming, is property that can be subjected to a security interest, then it, likewise, could be subjected to a federal tax lien. I have no doubt, therefore, that the license could be subject to sale—with the liquor control authorities retaining power over any resulting transfer.

Had I been writing the majority opinion, I would have held that the plaintiffs were entitled to a summary judgment on their cause of action, but that the case should be remanded for further consideration of the defendant's counterclaim.