**WYOMING BANK AND TRUST COMPANY, a Wyoming Banking Corporation, Appellant (Defendant),**

v.

**Carl L. WAUGH and Fay L. Waugh, husband and wife, Appellees (Defendants),**

**Nancy L. Williams, Appellee (Plaintiff).**

**Carl L. WAUGH and Fay L. Waugh, husband and wife, Appellants (Defendants),**

v.

**Nancy L. WILLIAMS, Appellee (Plaintiff).**

**Nos. 5121, 5122.**

Supreme Court of Wyoming.

Feb. 20, 1980.

William J. Kirven and Paul G. Jarvis, of Kirven & Kirven, Buffalo, signed the briefs and Mr. Kirven appeared in oral argument on behalf of Wyoming Bank and Trust Co.

Wade Brorby and Dan R. Price II of Morgan & Brorby, Gillette, signed the briefs and Mr. Price appeared in oral argument on behalf of Carl L. Waugh and Fay L. Waugh.

Charles R. Spratt, Buffalo, and Richard G. Miller, Casper, signed the briefs and appeared in oral argument on behalf of Nancy L. Williams.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROONEY, Justice.

Two cases are here consolidated on appeal. In Case No. 5121, appellant Wyoming Bank and Trust Company (hereinafter referred to as Bank) appeals from a portion of a judgment denying its counterclaim against appellee Nancy L. Williams (hereinafter referred to as Williams) and denying its cross claim against appellees Carl L. Waugh and Fay L. Waugh (hereinafter referred to as Waughs) for monies expended for legal fees in connection with the matter. In Case No. 5122, appellants Waughs appeal from a portion of the same judgment which awarded Williams $29,348.00 for breach of contract and $1.00 for punitive damages.

We affirm the judgment as it pertains to Case No. 5121; and we reverse the judgment as it pertains to Case No. 5122.

A single transaction has resulted in two separate cases being filed in the District Court, Fourth Judicial District, County of Johnson. The two cases were handled by different district judges. From these two cases, four separate appeals have been filed in this court. We have previously disposed of two of these appeals, one of which resulted from each of the two cases filed in the district court.[1] The other two appeals are the ones here consolidated. Since the one transaction was involved in all of the cases and since our disposition of one of the cases previously before us is determinative of one of the cases now before us, the following chronology is in order:

The following facts of the transaction were set forth substantially as follows in *Williams v. Waugh* (see footnote 1). On May 16, 1975, Waughs entered into an agreement with Williams and her husband for the sale of a business known as the Idlewild Cafe and Lounge in Buffalo, Wyoming (hereinafter basic agreement), and a lease for the premises. Waughs were sellers and lessors, and Williams and her husband were buyers and lessees. Within the same time frame, Williams and her husband executed a security and financing statement for certain furniture, fixtures, equipment, and kitchen and diningware (hereinafter first financing statement), a reassignment of the liquor license, a real estate mortgage on other property owned by Williams and her husband, a promissory note, and an escrow letter. Waughs executed a mortgage release, an assignment of liquor license, an escrow letter, and a bill of sale. The Bank was designated escrow agent to hold the basic agreement, the mortgage, the reassignment of the liquor license and the release of mortgage.

Thereafter, Williams and her husband were divorced, and Williams succeeded to the interest of her husband in the transaction. On March 28, 1977, she executed a security and financing agreement (hereinafter second financing statement) for the liquor license in favor of Waughs.

Between December 23, 1976, and October 26, 1977, various third parties secured seven default judgments in justice of the peace or district courts against Williams or against Williams and her husband. During the summer months of 1977, the Internal Revenue Service filed several tax liens, some against Williams and her husband separately and some against them jointly. On August 17, 1977, Internal Revenue agents took the liquor license from the wall of the cafe and lounge, but replaced it within a day.

The consideration for the basic agreement sale was $93,150.00. After initial payments, the balance of $90,000.00 (with interest at 7½%) was to be paid in twenty semi-annual installments. At the time of alleged defaults, the payments were current and the balance due, with interest, was about $61,000.00. The lease agreement was for a five-year term for $27,000.00 payable in monthly installments of $450.00.

The four cases on appeal then developed, insofar as pertinent to the matter before us, as follows:

On October 27, 1977, Waughs brought a foreclosure action against Williams (hereinafter referred to as Case A).

On December 6, 1977, Williams brought a breach of contract and fraud action against Waughs, Bank, City of Buffalo, William D. Omohundro, and Terrence L. O'Brien (hereinafter referred to as Case B).

On December 8, 1977, after a motion to dismiss was denied, Williams filed a counterclaim against Waughs in Case A, alleging among other things, "all the allegations made by the defendant, Nancy Williams, in her complaint against the plaintiffs" in Case B.

On March 31, 1978, Bank answered the amended complaint and filed a counterclaim against Williams and a cross claim against Waughs in Case B for monies expended for legal services and for punitive damages.

---

1. *Williams v. Wyoming Bank and Trust Company*, Wyo., 591 P.2d 884 (1979) and *Williams v. Waugh*, Wyo., 593 P.2d 583 (1979).

On May 12, 1978, summary judgment was entered in favor of Waughs on both Waughs' complaint and Williams' counterclaim in Case A. The case was appealed to this court.

On October 31, 1978, Bank was granted a summary judgment against Williams on Williams' cause of action against Bank in Case B. Williams appealed from the judgment to this court.

On January 2, 1979, and after a trial to the court, judgment was entered against Bank on its counterclaim and cross claim, and judgment was entered in favor of Williams against Waughs for $29,349.00 in Case B. Both Bank and Waughs now appeal from this judgment. (Judgment was also in favor of the City of Buffalo. Omohundro and O'Brien were previously granted summary judgment.)

On February 26, 1979, this court denied Williams' motion to permit late docketing and granted Bank's motion to dismiss Williams' appeal from the summary judgment of October 31, 1978 in Case B, thus disposing of one of the cases on appeal (see footnote 1) resulting from this transaction.

On April 18, 1979, this court reversed the summary judgment in favor of Waughs in Case A and remanded the case for further proceedings, thus disposing of the second of the cases on appeal (see footnote 1) resulting from this transaction.

CASE NO. 5122

██ In reversing the summary judgment in Case A, we noted that:

"The basic agreement, the lease and the two security and financing statements (hereinafter entire agreement) are all part of a single transaction. * * * The basic agreement does refer to the first financing statement. It provides that such financing statement 'shall be executed * * * for said fixtures and equipment transferred hereunder.' The first financing statement also refers to

the basic agreement. It provides that it 'is executed as security for the balance due pursuant to' the basic agreement. Even the second financing statement states that it is 'pursuant to' the basic agreement.

"The terms of the basic agreement, the two financing agreements and the lease agreement of the parties, i. e., the entire agreement, and the terms thereof, must be considered in determining whether or not a genuine issue of a material fact exists in this matter.

"'* * * Where a written contract refers to another instrument and makes the terms and conditions of the other instrument a part of it, the two will be construed together as the agreement of the parties. Two instruments executed at the same time as one transaction in order to effectuate a single purpose, and each referring to the other, must be considered together. * * *' 17 Am.Jur.2d Contracts, § 263, pp. 666, 667." *Williams v. Waugh*, 593 P.2d 583, 585–586 (1979).

The summary judgment against Williams was reversed in that case because it was predicated on only a portion of the entire agreement.[2] The same error was made in this case (Case No. 5122), the trial court having made the following specific findings in the judgment:

"5. That civil action No. 5305 [Case A] in the above entitled court involved a foreclosure strictly on the Security Agreements and not on the Contract For Sale.

"6. This action is governed by the Contract for Sale which was placed in escrow at Wyoming Bank and Trust Company, and that agreement alone defines default insofar as this action is concerned.

"7. That the reference to the Security Agreement in the Contract for Sale is surplusage."

Such findings are contrary to the holding which we subsequently made in Case A.

2. Justice Rose dissented because he could not agree that the trial court failed to consider the entire agreement. He did agree, however, that

it was necessary for the trial court to consider the entire agreement.

Findings number 6 and 7 evidence the failure of the trial court to consider the entire agreement in making its decision in this case. Since the judgment must result from a consideration of every provision of an agreement and since such was not here done, the judgment against Waughs must be reversed.

The "dissenting" opinion in this matter engenders the following additional remarks:

1. The "dissenting" opinion should be a specially concurring opinion.

It is plainly stated in the last sentence of the second preceding paragraph of this opinion that the judgment "against Waughs must be reversed." Again in the last sentence of this opinion we state that we reverse as to Case No. 5122 and we add a footnote that a remand is not necessary since the issues are already before the trial court on the counterclaim in Case B. We also state the fact of reversal in the second sentence of this opinion. And that is the disposition contended for in both the first and the penultimate paragraphs of the "dissenting" opinion.

2. The "dissenting" opinion fails to recognize the one time existence of the question as to whether or not the claim of Williams *was* properly a counterclaim to the claim of Waughs. The "dissenting" opinion assumes that it was always obvious that it was such and that Rule 13(a), W.R.C.P., would therefore control. When this matter came to this court in Case A, two separate district court judges had decided, by implication and expressly, that such claim was *not* a proper counterclaim to the claim of Waughs. They treated the transaction involving the security agreements as separate from the transaction involving the agreement to sell. It was not until we ruled otherwise that the security agreements and the agreement to sell *had to be* considered a single transaction. In this opinion, we recognize that fact and the opinion is predicated on the reasoning that we must reiterate the single transaction premise before consideration can be given to Rule 13(a). And, once the single transaction aspect is deter-

mined, it is dispositive of the case and further reference to Rule 13(a) is unnecessary. See footnote 5, infra.

3. The foregoing reflects why two different district court judges reached diametrically conflicting results. Such does not "defy comprehension" as stated in the "dissenting" opinion. In this opinion we afford recognition to the trial judges' approach to the problem. They meet these problems without the benefit of the time for research and contemplation as is afforded to us. Contrary to the averment in the "dissenting" opinion, reasonable minds often reach different conclusions on the same issue. Certiorari is granted by the U.S. Supreme Court in many instances to resolve conflicts in holdings reached in the several circuits on the same or similar problems.

## CASE NO. 5121

Williams and Waughs executed an escrow letter to Bank under which Bank was to hold the mortgage, the reassignment of the liquor license, the release of the mortgage, and a copy of the basic agreement. The escrow was established, and Bank later released the escrow documents to Waughs. As previously indicated, Williams named Bank as a defendant in Case B as a result of such release. We need not here concern ourselves with the propriety of the release inasmuch as Bank received summary judgment on the claim relative thereto and the appeal therefrom was dismissed. The issues in this case (No. 5121) arise from the judgment against Bank on its counterclaim and cross claim for attorney fees expended in this matter, and they are predicated upon the following language in the escrow letter:

"The parties agree that in consideration of the Wyoming Bank & Trust Company acting as Escrow Agent under the terms of this agreement, and in accordance with the instructions provided herein, that it shall not be held liable in any manner for the honest exercise of its judgment and discretion in assuming to carry out the terms of this escrow."

The Bank contends: (1) that this language created a contract of indemnity in favor of

it, and (2) that the escrow was an agency relationship, entitling it, as an agent, to indemnity from the principals for expenditures incurred in defending an action brought against it by one of the principals.

■■ Arguments as to whether or not the language in the escrow letter created a "contract of indemnity"[3] are, in fact, arguments as to whether or not such language created a contractual provision for payment of attorney fees. We need not, therefore, follow the circuitous argument suggested by counsel and determine whether or not the language in question created an indemnity contract and, if so, whether or not the attorney fees are then automatically recoverable. We must only determine whether or not such language reflected an intent on the part of the parties to allow the recovery of the attorney fees. In other words, we need not concern ourselves with what may have been the legal result of the letter if words such as "indemnity" and "hold harmless" were used. The words used were: "not be held liable in any manner." The question is: Do these words reflect an intent to charge Williams and Waughs with the obligation to reimburse Bank for its attorney fees?

> "The primary rule of construction in interpreting contracts is to give effect to the intention of the parties as expressed by the language they employ. * * * "[4] *Marathon Oil Company v. Kleppe*, D.Wyo., 407 F.Supp. 1301, 1306 (1975), affirmed 10th Cir. (1977), 556 F.2d 982. Accord *Pilcher v. Hamm*, Wyo., 351 P.2d 1041 (1960).

> "Liable" means "responsible." *Bostick v. Usry*, 221 Ga. 647, 146 S.E.2d 882 (1966); *Thorgaard Plumbing & Heating Co. v. County of King*, 71 Wash.2d 126, 426 P.2d 828 (1967); *Penn v. Commercial Union Fire Insurance Company of New York*, 233 Miss. 178, 101 So.2d 535 (1958); *Holmes·v. Blue Bird Cab*, 227 N.C. 581, 43 S.E.2d 71 (1947).

" * * * 'Liability' is defined by Black's Law Dictionary to be 'the state of being bound or obliged in law or justice to do, pay, or make good something; legal responsibility.' Webster defines it to be 'the state of being bound or obliged in law or justice; responsibility.' Bouvier defines it to be 'responsibility; the state of one who is bound in law and justice to do something which may be enforced by action.' * * * " *Benge's Adm'r v. Bowling*, 106 Ky. 575, 51 S.W. 151 (1899).

■ The escrow letter, then, provided that the Bank "shall not be held *[responsible]* in any manner for the honest exercise of its judgment and discretion * * *." It did not make provision for payment of attorney fees or other expenses occasioned by occurrence of events relating to the escrow. Intent of the parties to do so cannot be read into the language used.

In granting Bank's motion for a summary judgment when an effort was made to attach "liability" to it for alleged mishandling of the escrow agreement, the trial court enforced the provision of the agreement relative to not holding the Bank liable or responsible. To go further and hold that the language required reimbursement of attorney fees occasioned by the defense of the action would be to go beyond the language of the instrument itself, and it would be ascribing an intent to the parties contrary to that expressed by the language used by them. The language clearly *relieves* Bank from liability. It does not *impose* liability or responsibility on Williams, Waughs or any others.

■ This language not only controls the responsibility of Williams and Waughs for Bank's attorney fees relative to Bank's contention that a contract of indemnity was created, but it also controls as to Bank's

---

**3.** " * * * Indemnity springs from a contract, express or implied, which enforces a duty to respond for all the damages. * * * " *Chicago and North Western Railway Company v. Rissler*, D.Wyo., 184 F.Supp. 98, 101 (1960).

**4.** Issues relative to exceptions to this rule are not before us, i. e., exceptions such as fraud, willful wrong or gross negligence. See *Werner v. American Surety Company of New York*, Wyo., 423 P.2d 86 (1967); *Jenkins v. Commercial Nat. Bank of St. Anthony*, 19 Idaho 290, 113 P. 463 (1911).

contention that the escrow was an agency relationship whereby Bank, as agent, could recover for expenditures incurred in defending an action brought against it by Williams, as one of the principals. As already noted, there is no specific contractual or statutory authorization for recovery of such attorney fees. If there is some quasi-contractual entitlement of an agent to reimbursement for attorney fees and expenses incurred in defending actions brought against him by third persons because of his agency, the entitlement does not exist with respect to actions brought against him by the principal for failure to properly carry out the agency. *Cory Bros. & Co. v. United States*, 2nd Cir. 1931, 51 F.2d 1010; *Buckley v. City of New York*, 170 Misc. 412, 10 N.Y.S.2d 650 (1939), leave to appeal granted, 264 App.Div. 767, 35 N.Y.S.2d 719 (1942), affirmed 289 N.Y. 742, 46 N.E.2d 352 (1942). Furthermore, an escrow holder has a relationship with *both* parties. It is difficult to describe such relationship as an "agency."

"* * * To the extent the term agent is applicable, it is a limited agency, with duties and powers limited to the terms of the escrow agreement. He is sometimes spoken of as the trustee of an express trust. 10 R.C.L. 633. Certainly, to call him the agent of the parties leads to confusion. It is as well to treat him as just what he is, a third party to whom the principal parties to the contract have intrusted certain authority by the escrow agreement. He must look to that for his powers and duties. The escrow agreement may be in writing or in parol, or part of it in writing and part in parol. 10 R.C.L. 624. It is essential, of course, that he know the terms of the escrow agreement in order to understand his duties. But when he knows those he acts by virtue of his own powers and authority and not as the agent of anybody. * * *" *Nickell v. Reser*, 143 Kan. 831, 57 P.2d 101, 103–104 (1936). Also see 28 Am. Jur.2d Escrow § 11 (1966).

The judgment is affirmed as it pertains to Case No. 5121, and it is reversed as it pertains to Case No. 5122.[5]

THOMAS, J., filed a dissenting opinion in Case 5122 in which ROSE, J., joined.

THOMAS, Justice, with whom ROSE, Justice, joins dissenting in Case No. 5122.

I dissent from the disposition of the majority of this court with respect to Case No. 5122. I have no real quarrel with what the majority opinion says about the dispute between Nancy L. Williams and Carl L. Waugh and Fay L. Waugh. My disagreement is with the fact that anything at all is said.

Among those matters which are extremely difficult to deal with I put those things which could not possibly have happened but yet they did. How the opposite sides in terms of affirmative claims relating to this transaction came to be treated with by two different district judges who reached diametrically conflicting results defies comprehension. That, however, is what happened.

Turning to the categorization of the two causes used by the majority opinion, I would hold that Case B, filed by Williams, should have been dismissed rather promptly by the judge to whom it was assigned once the filing of the counterclaim in Case A was brought to that judge's attention. Nothing could be more clear to me than the application to this situation of Rule 13(a), W.R. C.P., which states as follows:

"Rule 13. Counterclaim and cross-claim.

"(a) *Compulsory counterclaims.*—A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the

---

5. A remand is unnecessary inasmuch as the issues here involved are already before the trial court in the counterclaim of Case A. Our disposition of this matter on the grounds chosen does not reflect our approval of the failure to apply Rule 13(a), W.R.C.P., in connection with Cases A and B.

court cannot acquire jurisdiction, except that such a claim need not be so stated if at the time the action was commenced the claim was the subject of another pending action."

Apparently this was no mystery to counsel for Williams, who did in fact file such a counterclaim in Case A alleging by reference Williams' complaint in Case B, as noted in the majority opinion.

The application of Rule 13(a) to this situation was called to the attention of the trial judge in Case B on more than one occasion after the entry of the summary judgment against Williams in the first case. Even though an appeal had been taken from the judgment in Case A, in the absence of a stay of that judgment it was final for purposes of the doctrine of res judicata or the doctrine of judicial estoppel with respect to Case B, which the court now is deciding on its merits. Not only does the court decide it on its merits, but it is not remanded for further proceedings because the "issues here involved are already before the trial court in the counterclaim of Case A." Thus without invoking Rule 13(a), W.R.C.P., the majority circuitously effects the result that Rule 13(a) was designed to require.

Our Wyoming Rules of Civil Procedure are based upon the Federal Rules of Civil Procedure, and the persuasive effect of federal authorities construing the federal rules is a proposition which we previously have honored. *Whitefoot v. Hanover Ins. Co.*, Wyo., 561 P.2d 717 (1977). With respect to the federal rule, it is said in 6 Wright and Miller, Federal Practice and Procedure, § 1403, p. 13 (West Publishing Co. 1971):

"The expectation is that this liberal joinder policy will further the elimination of circuity of action and multiple litigation." (Footnotes omitted.)

This case is the antithesis of that reasonable expectation. I am appalled that the court in any manner should encourage counsel and the district courts in instituting or fostering a practice as deplorable as this case demonstrates. Not only has one lawsuit been divided into two, but the reaching of conflicting results is a prospect that the drafters of this rule did not even see fit to contemplate.

Because of the peculiar history of this case the only analogous federal cases would appear to be those in which the multiple suits were pending in both a state and a federal court. In such a situation when one of the two courts has proceeded to judgment, that case at that juncture does serve as a basis for asserting a res judicata or collateral estoppel defense in the action still pending. *Penn General Casualty Co. v. Commonwealth of Pennsylvania ex rel. Schnader*, 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850 (1935); *Kline v. Burke Const. Co.*, 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077 (1922); *Carter v. Bedford*, 420 F.Supp. 927 (D.Ark.1976); *Nolen v. Hammet Company, Inc.*, 56 F.R.D. 361 (D.S.C. 1972); *L. F. Dommerich & Co. v. Bress*, 280 F.Supp. 590 (D.N.J.1968); *Maryland Casualty Co. v. Quality Foods, Inc.*, 8 F.R.D. 359 (D.Tenn.1948). I confess that this analogy is awkward because it is very difficult to visualize two district judges serving the same court in the State of Wyoming in the competitive and uncontrolled role visualized when actions are pending in a federal and a state court. The results reached, however, seem to be substantially the same.

I therefore would reverse the judgment in Case No. 5122 with direction to the district court that it be dismissed or consolidated with Case A. I would not consider the matter on the merits because that amounts to a failure on the part of this court to honor the requirements of our own procedural rules. It might even be described as lending credence to practice techniques which are nonsensical. I recognize that the majority opinion expresses its failure to approve of the practice in footnote 5, but that simply is a passing recognition of the important concept upon which this case should be decided.

As to Case No. 5121, I agree with the disposition made. I believe that the counterclaim and cross-claim of the bank in that case had sufficient independent status to permit the court to adjudicate it even upon the dismissal of Williams' action.