**Robert L. KINDERKNECHT and Sherill D. Kinderknecht, Appellants (Defendants),**

v.

**Harry POULOS and Mary Poulos, Appellees (Plaintiffs).**

No. 85-44.

Supreme Court of Wyoming.

Oct. 17, 1985.

Don W. Riske of Riske, Edmonds & Darrow, P.C., Cheyenne, for appellants.

Charles E. Graves and George Santini of Charles E. Graves & Associates, Cheyenne, for appellees.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

CARDINE, Justice.

This appeal is from a judgment declaring the appellants in default on a contract for the purchase of real estate and ordering them to pay the remaining balance of $155,951.68 plus accrued interest, as well as attorney's fees in the amount of $3,187. Appellants allege that the district court erred in its construction of the applicable contracts.

We affirm.

On June 7, 1978, the parties entered into a contract titled "Agreement for Warranty Deed." Pursuant to this contract, the appellants agreed to purchase from the appellees a four-story office building located in downtown Cheyenne. This building is commonly known as the Bell Building. The total purchase price for it was $201,000. The contract provided that $25,000 was to be paid immediately and that the balance was to be paid in monthly installments over a period of ten years. The installments were in the amount of $1,416.15 and applied first towards interest, set at 9% per annum, and then towards the principal. In addition, the appellants were required to pay all taxes and assessments on the building from the date of the agreement.

The contract further provided that if the appellants breached the agreement, the appellees could choose whether

"to maintain an action for specific performance of this contract; or to declare the entire amount of principal and interest remaining unpaid hereunder due and payable immediately and to maintain an action to collect said balance; or to declare this contract void, and thereupon to recover by distress upon the premises or

otherwise all the interest which shall have accrued upon this contract up to the day of declaring it void, as rent for use and occupation of said premises, to hold and retain all monies paid on this contract by said parties of the second part, as liquidated damages, and to take immediate possession of the premises, to regard the person or persons in possession on such termination of the contract as tenant or tenants holding over without permission, and to recover all damages sustained by holding over without permission, or by reason of any waste or damage committed or suffered on said premises. * * *

"In the event of default in the payment of the amounts due hereunder, or the performance of any other covenants and promises by parties of the second part, resulting in filing an action for specific performance by the parties of the first part, or in filing of an action by them to collect the entire balance due, it is agreed that a reasonable attorney's fee and all other costs of collection shall be added to the amounts due under this agreement."

On March 12, 1980, appellants sold the Bell Building to Platte Valley Land & Cattle Company and a second contract was entered into, it being entitled "Contract for Sale of Real Estate for Delivery of Deed and for Assignment of Prior Agreement for Warranty Deed." The appellants, the appellees, and Platte Valley Land and Cattle Company (Platte Valley hereinafter), all signed this contract as parties. This contract provided in pertinent part:

"NOW, THEREFORE, for and in consideration of their mutual covenants and agreements herein contained and Five Thousand Dollars ($5,000.00) paid in hand by Platte Valley to Brokers, pending final exchange, the parties hereto have agreed as follows:

"1. Kinderknechts [appellants] shall assign and Pouloses [appellees] consent and agree to the assignment of their obligations and rights to that Agreement for Warranty Deed (Attachment A) to Platte Valley, subject to the terms and conditions contained herein and in At-

tachment A. *It is expressly understood and agreed that Kinderknechts shall remain liable to Pouloses pursuant to their obligations contained in the Agreement for Warranty Deed.* (Attachment A). [Emphasis supplied.]

"2. Pouloses formally waive and hereafter terminate that requirement under the Agreement (Attachment A) that their permission in writing be had and obtained prior to this transfer and any subsequent transfers by Platte Valley, their assigns or successors in interest. In the event of a subsequent conveyance, Platte Valley agrees to promptly notify Pouloses and Kinderknechts of the names of the new assignee.

\* \* \* \* \* \*

"17. In the event that Platte Valley shall become in default of any of the terms and conditions of this Contract, Kinderknechts shall, *AT THEIR SOLE OPTION,* HAVE THE RIGHT TO *EITHER:*

"(a) seek specific performance of this Contract and the terms contained herein; *or* to

"(b) Declare this Contract terminated and/or rescinded by Platte Valley;

"PROVIDED, HOWEVER, that Kinderknechts shall first give to Platte Valley written notice of such default by Certified Mail, Return Receipt Requested (or by other provable means of service) and allow the Purchasers ninety (90) days after the receipt of said notice within which to cure and correct such default.

"18. In the event of such default and Kinderknechts' election to proceed under Paragraph 17(b) above, by declaring this Contract rescinded or terminated, Platte Valley shall, within ninety (90) days after receipt of such notice, promptly vacate the premises and Kinderknechts shall be entitled to retain as liquidated damages the Forty Thousand Dollars ($40,000.00) down payment as set forth in Paragraphs 3(a) and (b) above, plus a sum equal to all monthly payments made to the date of the declared default as com-

pensation for Platte Valley's actual time of occupancy, which sum Platte Valley recognizes and admits to be a reasonable sum in lieu of the payment of rent and loss of revenue. The default provisions contained herein shall replace those contained in the Agreement for Warranty Deed (Attachment A)." (Emphasis in original except specifically where noted.)

Subsequently, Platte Valley sold the property to another party. In the fall of 1983 payments to appellees became delinquent. The appellees notified the appellants that the payments were in default. Thereafter, on February 29, 1984, appellants and appellees agreed to list the property for sale with a real estate agent. The parties stipulated that the net proceeds from any sale of the building were to be first applied to paying off the remaining indebtedness on the 1978 agreement and the balance, if any, given entirely to appellants. When no buyer was found, appellees filed suit. They claimed that under the 1978 contract they were entitled to payment of the outstanding balance. Appellants responded that the 1980 contract had superseded the 1978 contract and that under the 1980 contract acceleration was not a remedy for default.

The matter proceeded to trial on December 18, 1984. After taking the matter under advisement, the trial court found in its opinion letter: "[T]he 1980 contract for sale was not intended to nor did it alter or extinguish any rights the Pouloses had by virtue of the 1978 agreement for warranty deed * * *." From the wording of the trial judge's letter, we conclude that he considered the contract ambiguous and resolved the parties' intent as a question of fact. Judgment was formally entered on January 4, 1985.

We have previously held that the construction of a contract is a question of law when its terms are plain and unambiguous, and a question of fact when the contract is unclear and extrinsic evidence is admissible to establish the parties' intent. *Meuse-Rhine-Ijssel Cattle Breeders v. Y-Tex Corp.*, Wyo., 590 P.2d 1306 (1979).

■ Appellants contend that the sentence found in the 1980 contract which states, "[t]he default provisions contained herein shall replace those contained in the Agreement for Warranty Deed (Attachment A)," unambiguously amends the 1978 contract. However, the 1980 contract also provides, "[i]t is expressly understood and agreed that Kinderknechts shall remain liable to Pouloses pursuant to their obligations contained in the Agreement for Warranty Deed. (Attachment A)." Ambiguity arises as to whether the 1980 contract intended to change the remedies available to the appellees in case of default. Thus, it was a question of fact as to the parties' intention.

■ When presented with a challenge to a trial court's finding of fact, we accord considerable deference to that court's conclusions and will reverse only if the findings are clearly erroneous or against the great weight of the evidence. *Sanford v. Arjay Oil Co.*, Wyo., 686 P.2d 566 (1984). Here the evidence does not establish that the findings of the trial court were clearly erroneous in concluding that the 1980 contract neither altered, nor was intended to alter, the appellees' remedies for default under the 1978 contract. On the contrary, the court's decision is significantly supported by the express written agreement of the parties that appellants are to remain liable to appellees as provided in the 1978 agreement for warranty deed.

On the record before us, we cannot conclude that the trial court clearly erred in finding that the parties did not intend to alter appellees' remedies against appellants in case of a default. It is reasonable to believe that the 1980 contract sought only to make clear that as between appellants and Platte Valley the default provisions of that contract controlled.

Affirmed.

THOMAS, Chief Justice, specially concurring.

I concur in the result in this case reached by the majority opinion. In my judgment,

however, there is no ambiguity with respect to the rights of the Pouloses in this instance. I am not sure that the district court really found ambiguity, but if it did that finding is fully reviewable by this court because "[w]hether ambiguity exists is a question of law. *Redding Foods, Inc. v. Berry,* Tex.Civ.App., 361 S.W.2d 467 (1962); *Bosler v. Coble,* 14 Wyo. 428, 84 P. 895 (1906)." *Amoco Production Company v. Stauffer Chemical Company of Wyoming,* Wyo., 612 P.2d 463, 465 (1980).

In this instance the two contracts disclose clearly that the Kinderknechts remained liable to the Pouloses according to their original contract. The Kinderknechts however, have an option to seek specific performance or rescind the contract with respect to any failure on Platte Valley to perform the terms of the second contract. I cannot discern how the second proposition creates ambiguity with respect to the first. For me the contract is in writing and the language is clear and unambiguous, and the intention of the parties that the Pouloses would continue to enjoy their rights under the 1978 contract is unequivocal. See *Guynn v. Holst,* Wyo., 696 P.2d 632 (1985); *Cheyenne Mining and Uranium Company v. Federal Resources Corporation,* Wyo., 694 P.2d 65 (1985); *Salt River Enterprises, Inc. v. Heiner,* Wyo., 663 P.2d 518 (1983); *Busch Development, Inc. v. City of Cheyenne,* Wyo., 645 P.2d 65 (1982); *Amoco Production Company v. Stauffer Chemical Company of Wyoming,* Wyo., 612 P.2d 463 (1980); *Wyoming Bank and Trust Company v. Waugh,* Wyo., 606 P.2d 725 (1980); *Hollabaugh v. Kolbet,* Wyo., 604 P.2d 1359 (1980); *Pilcher v. Hamm,* Wyo., 351 P.2d 1041 (1960); *Fuchs v. Goe,* 62 Wyo., 134, 163 P.2d 783 (1945).