## URSE et al. v. MARYLAND CASUALTY CO.

### Civ. A. No. 27–P.

District Court, N. D. West Virginia.

Feb. 16, 1945.

Ward Lanham, of Fairmont, W. Va., for plaintiff.

C. Brooks Deveny, of Fairmont, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

John Urse, Joseph Morrone and William Reese, plaintiffs, are owners of Eastland Bowling Lanes, in Fairmont, West Virginia. They carried an insurance policy with Maryland Casualty Company, defendant, insuring their bowling alley against certain types of water damage. Suit was instituted in the state court by plaintiffs on this insurance policy to recover $13,000

damages, and by reason of diversity of citizenship, the action was removed to this court, where it was tried by the court in lieu of a jury. Defendant claims that the loss is not covered by the insurance policy. On this single issue the case has been submitted for decision upon the policy of insurance and the following agreed statement of facts.

"On Sunday, June 7, 1942, about 7:00 o'clock p.m., William Reese, one of the plaintiffs in this action, closed the Eastland Bowling Lanes for the purpose of taking the boys who were employed at the bowling alley for a ride, returning about 8:00 p.m. While he was away from the bowling alley there was an unusually and extremely hard storm, which was in the nature of a cloudburst, during which about two inches of rain fell. When Reese returned he found about eight or nine inches of rain in the bowling alley.

"The Eastland Bowling Lanes is located in the basement of the Eastland Theater Building, which is situated on Morgantown Avenue in the City of Fairmont, Marion County, West Virginia; the land on which the building is located is several feet below the level of Morgantown Avenue and is lower than the surrounding property; the land to the rear and east of the property slopes toward the Eastland Bowling Lanes for a distance of several hundred feet, causing the water which fell in this rain to flow into the low point surrounding the Eastland building; that the surface drains or storm sewers which are located about 40 feet to the rear of the building were not sufficient in size to carry away this water, consequently a large pool of water collected on both sides of the building, at a depth of 26 to 28 inches above the ground level.

"The water from this pool entered the inside of the building by seepage through the cement block walls and around the basement walls and doors, which were warped; and the water was bubbling up and running out of the commode in the women's rest room.

"None of the underground water supply mains or Fire Hydrants were broken or damaged at the time.

"It is understood that the plaintiffs and the defendant are not, by this agreement as to facts, agreeing as to the amount of damage done, and it is agreed that evidence of the amount of damage will be submitted to the Court by all parties, if necessary."

Among other things, the policy insures the bowling alley against "all direct loss and damage caused solely by the accidental discharge, leakage or overflow of water or steam from within the following source or sources: * * * rain or snow admitted directly to the interior of the building through defective roofs, leaders or spouting, or by open or defective doors, windows, show windows, sky-lights, transoms or ventilators", except as otherwise provided in the policy.

First, defendant says that the damage was not caused *by rain admitted directly to the interior* of the building through defective roofs, leaders or spouting, or by open or defective doors, windows, show windows, sky-lights, transoms, or ventilators, but was from a *pool of water* which had accumulated around the building; that the damage was caused solely by accumulated surface water entering the building by seepage through the cement basement walls, the doors, and by backing up through the commode; that a large pool of water in the low point surrounding the building is not one of the "sources" enumerated in the policy; and that the intent is clear that the water must originate from some defective appliance or installation as a source of *rain admitted directly* to the interior of the building. Water damage is defined in the policy as "the accidental discharge, leakage or overflow of water, * * * rain * * * from systems, tanks, appliances and parts of buildings insured against as sources of loss * * *". Defendant cites the case of Poole v. Sun Underwriters Ins. Co., 1937, 65 S.D. 422, 274 N.W. 658, 660, wherein the court said: "To us it is quite clear that the heavy rain which fell, after it reached the ground, was no longer rain, but became water and falls within the classification of waters which is known as surface water, and therefore under the terms of the policy the damage caused to the automobile was included under paragraph C-3, as defined by paragraph K, which covers the peril known as 'water damage.' "

Secondly, defendant says that if the court should hold that the water came from a source covered by the policy, then the loss is specifically excluded by the following provision in the policy: "This company shall not be liable for loss or damage caused directly or indirectly, (a) by seepage, leakage or influx of water through building walls, foundations, lowest basement floors, sidewalks or sidewalk lights;

or (b) by floods, inundation, backing up of sewers or drains, or the influx of tide, rising or surface waters; * * *".

Since the insurance contract was made in West Virginia we first look to the courts of that state for the law on this subject. We find that the Supreme Court of Appeals of West Virginia has clearly stated the general rule of construction of insurance contracts as follows: "In numerous cases, this Court has adopted and maintained as a cardinal rule of construction that clauses in insurance contracts should be construed liberally to the insured. (Citing numerous cases.) This rule of construction, cardinal as it is, should not be applied to contravene the intention of the parties. In all events, 'policies of insurance, like other contracts, must receive a reasonable interpretation consonant with the apparent object and plain intent of the parties.' Pt. 3, Syl., Kanawha Investment Co. v. Hartford Steam Boiler Inspection, etc., Co., supra [107 W.Va. 555, 149 S.E. 605]." Thompson v. State Automobile Mut. Ins. Co., 122 W.Va. 551, 11 S.E.2d 849, 850. This is the general law supported by the great weight of authority. 4 Appleman, Insurance Law and Practice, § 2324. As a general proposition ambiguous phrases in an insurance policy are construed against the writer thereof, and liberally in favor of the assured.

There are no West Virginia decisions construing a water damage policy of this type. However, the Supreme Court of Appeals of West Virginia has defined "surface water" in the following language: "Surface water is water of casual, vagrant character, oozing through the soil, or diffusing and squandering over or under the surface, which, though usually and naturally flowing in known direction, has no banks or channel cut in the soil; coming from rain and snow, and occasional outbursts in time of freshet, descending from mountains and hills, and inundating the country; and the moisture of wet, spongy, springy, or boggy land. For obstructing or diverting surface water, though damaging another, the party is not liable." Neal v. Ohio River R. Co., 47 W.Va. 316, 34 S.E. 914, Pt. 2 Syl.

In LeBrun v. Richards, 210 Cal. 308, 291 P. 825, 828, 72 A.L.R. 336, surface waters are defined as follows: "Surface waters are those which are produced by rainfall, melting snow, or springs, and which in the case of the two first-mentioned sources are precipitated, and in the case of the last-mentioned source, rise upon the land. See cases cited supra. Such waters are not divested of their character as surface waters by reason of their flowing from the land on which they first make their appearance onto lower land in obedience to the law of gravity." The various definitions of surface waters are collected in Thompson v. New Haven Water Co., 86 Conn. 597, 86 A. 585, 45 L.R.A.,N.S., 457.

This court has been able to find only three cases involving water damage policies where other courts have construed the words "surface water". In Poole v. Sun Underwriters Ins. Co., supra, the policy insured plaintiff's automobile against water damage, the policy providing that "the car is insured against accidental and external discharge of water excluding damage caused by rain, sleet, snow, flood." There had been a severe rainstorm with about two and one-half inches of rain falling in less than two hours. About two feet of water gathered on the streets. These waters broke the windows in the basement where plaintiff's car was kept causing the damage to his car. Defendant contended that the loss sustained was the direct result of rain and flood and excluded from coverage, whereas plaintiff claimed that the loss resulted, not from rain or flood but from surface water, and was thereby included in the coverage. The court held that it was surface water and not a flood. Defendant cites this case and points out that in the policy we have under consideration here, both surface water and flood are excluded from coverage. In the Poole case the court cites Miller v. Eastern Ry. & Lumber Co., 84 Wash. 31, 146 P. 171, 173, where the Supreme Court of Washington quotes with approval a definition of surface water from Kinney on Irrigation and Water Rights, Sec. 318, as follows: " 'Surface' water may be defined as water on the surface of the ground, the source of which is so temporary or limited as not to be able to maintain for any considerable time a stream or body of water having a well-defined and substantial existence." The Poole case holds that water moving in volume, whose source is a stream, should be classified as a flood, and that water on the surface of the ground of a casual or vagrant character, following no definite course, and with no permanent source of supply, and which may be lost by being diffused over the surface of the ground, is surface water.

In Fenmode, Inc., v. Ætna Casualty & Surety Co., 1942, 303 Mich. 188, 6 N.W.2d 479, there had been a very heavy rainstorm. So much water came down from the roof that instead of the water being carried away through the drain pipe, it ran down into the driveway, the accumulation of water being too much for the sewer to carry away. The water came into plaintiff's store through the back door and ran down the stairs. The policy sued upon was exactly the same as the policy now under consideration, the coverage provision of the policy and the exclusion clause being word for word the same. Plaintiff claimed the damage was caused by water which entered the premises directly from a defective spout and through a defective back door. Defendant claimed the damage was caused by surface water which flowed under the defective door. The case was heard by a trial judge sitting without a jury who found that the damage was caused by accumulated or surface water entering the premises, and held that there should be no recovery under the policy because damage caused by such water was specifically excepted from the coverage of the policy. The Supreme Court of Michigan affirmed the lower court.

In Goldfarb v. Maryland Casualty Co., 311 Ill.App. 568, 37 N.E.2d 376, 377, somewhat similar facts and a similar water damage policy was involved. The decision there turned primarily on the determination of the facts by the trial judge sitting without a jury who found that the damage was caused by rain which entered the premises "directly" through a defective door. The court found that there was "no evidence that there was any water lying on the ground, in the area way back of the defective door." This difference is important and clearly distinguishes it from the case at bar.

█ Applying these authorities to the case under consideration it would seem clear that the water which entered plaintiff's building partakes of all the characteristics contained in the various definitions of what constitute surface water and is what is commonly understood to be surface water. And it seems equally clear that the loss in question is specifically and definitely excluded from coverage by the policy provision quoted above. The loss is excluded under (a) because caused "by seepage, leaking or influx of water through building walls, foundations, lowest basement floors", etc.; and is likewise ex-

cluded under (b) because caused "by floods, inundation, backing up of sewers, or drains, or influx of * * * surface waters; * * *." These are clear words and are not susceptible of the slightest ambiguity.

Because the language of this exclusion clause is so definite and specific, it becomes entirely unnecessary to pass upon defendant's first proposition to the effect that the water did not come from a source covered by the body of the policy.

█ It appears that there is a rider attached to the policy covering accidental discharge or leakage of water from "Underground Water Supply Mains and Fire Hydrants". The agreed statement of facts provides: "None of the underground water supply, mains or Fire Hydrants were broken or damaged at the time". Consequently this rider can render neither aid nor comfort to plaintiff in this controversy.

Judgment must be rendered for defendant. An appropriate order may be entered in accordance with the views herein expressed.