LANDRY, Judge.
Plaintiff (Sherwood) appeals the judgment of the trial court rejecting its claim for the cost of repair to the roof of plaintiff’s building, pursuant to a policy issued by defendant (Old Colony) insuring the structure against damage by windstorm. Plaintiff also prayed for penalties and attorney’s fees predicated upon defendant’s alleged arbitrary refusal to timely pay the damages sustained. The trial court rejected plaintiff’s demands upon finding the loss was occasioned by the weight of water collected upon the roof of the building, a risk not covered within the policy provisions. We affirm the judgment rendered below.
Old Colony is the sole defendant named in plaintiff’s petition. Defendant denies coverage and alternatively alludes to other insurance in force affecting the same property. On this basis, defendant alleges it can only be held for one-half the loss if the loss is in fact covered. Defendant did not, however, name or third party the other alleged insurer. Plaintiff maintains Old Colony is the sole insurer. By stipulation, a policy issued by Maryland Casualty Company, allegedly insuring the same property against windstorm damage, was admitted in *446 evidence below. We no^.e that since Old Colony did not implead or serve Maryland Casualty Company, no judgment could be rendered herein against said alleged insurer under any circumstances.
It is conceded the policy coverage is against “direct loss by windstorm. * * * ”
In addition, it is conceded the policy provides as follows:
“Water Exclusion Clause: This Company shall not be liable for loss caused by, resulting from, contributed to, or aggravated by, any of the following — (a) flood, surface water, waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not; (b) water which backs up through sewers or drains; (c) water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basement or other floors, or through floors, windows or any other openings in such sidewalks, driveways, foundations, walls or floors unless loss by fire or explosion ensues, and this Company shall then be liable only for such ensuing loss.
“This Company shall not be liable for loss to the interior of the building or the property covered therein caused, (a) by rain, snow, sand, or dust whether driven by wind or not, unless the building covered or containing the property covered shall first sustain an actual damage to roof or walls by the direct force of wind or hail and then shall be liable for loss to the interior of the building of the property covered therein as may be caused by rain, snow, sand, or dust entering the building through openings in the roof or walls made by direct action of wind or hail or (b) by water from sprinkler equipment or other piping unless such equipment or piping be damaged as a direct result of wind or hail.”
The sole issue before the court is whether the loss falls within the above coverage or the exclusions as hereinabove set forth.
There is no dispute concerning the salient facts. The building in question measures approximately 38 X 100 feet. Its roof is what is known as a “built up roof” meaning the roof is almost flat but with a slight incline to permit the run-off of water. The slope of plaintiff’s building is from east to west, the water draining off at the west end of the structure. The record shows that such a roof is constructed by placing multiple layers of roofing felt over decking. Each layer of felt is then mopped heavily with either tar or bitumen, in this case bitumen being utilized. On April 14, 1967, a heavy rainstorm occurred during which the roof of plaintiff’s building began to leak. When the rain subsided, it was discovered that water had collected on the roof causing a pool to form as hereinafter indicated. It is conceded the weight of the water caused the roof to leak.
Plaintiff maintains the damage is the direct result of windstorm because during the rainstorm, accompanying winds, blowing from west to east, prevented the run-off of water thus causing the water to collect until its weight damaged the roof. Defendant maintains, however, there is no proof of wind damage as required by the policy. Alternatively, defendant maintains the damage falls within the “surface water” provision of subdivision (a) of “Water Exclusion Clause”, above.
Plaintiff produced a single witness to establish that the damage was the direct loss of windstorm, namely, plaintiff’s father-in-law, Mario Cucchiara, a General Contractor. In essence Mr. Cucchiara testified he inspected the roof on May 6, 1967, some seven weeks following the storm, and found a pool of water approximately 20 feet in diameter in the center and toward the front of the roof. He estimated the depth of the water to be one and one-half inches. He also found “blisters” in the roofing material indicating that water had gotten beneath the felt causing gases to form from the heat *447 of the sun, hence the blisters. Approximately 10 days prior to the storm he had performed minor repairs to the roof, leaving it in good condition. His examination of the roof after the storm disclosed no evidence of wind damage. It was Cucchiara’s opinion that a strong west wind which blew during the rainstorm held back the water, prevented its draining from the roof and caused it to collect on the roof until its weight made the roof leak.
The roof was also inspected by Donald James, Adjuster, on behalf of defendant. James testified in effect that he made the examination in Cucchiara’s presence and found no evidence of wind damage to the roof. He noted a pool of water on the roof in the approximate area mentioned by Cuc-chiara but, in James’ opinion, the pool was not quite as large as indicated by Cucchiara. An inspection of the interior of the building revealed leaking through the ceiling but no evidence of wind damage.
It is elementary that one claiming under a policy of insurance must establish that the loss is covered by the policy terms. Macaluso v. Watson, La.App., 188 So.2d 178.
Here the policy protects only against direct loss by windstorm. The present policy also expressly excludes damage by surface water, whether wind driven or not.
Plaintiff has failed to establish, to that degree of certainty required for recovery, that the loss was the direct result of windstorm. The record discloses absolutely no evidence of wind damage as such. Considering the record is barren of evidence regarding wind velocity during the storm, the duration of the disturbance and the amount of rainfall, Mr. Cucchiara’s conclusion that a strong west wind was the cause of the damage is sheer speculation. Judgments cannot be based on conjecture, surmise or even unsupported probability. Schulingkamp v. Bolton Ford, Inc. et al., 163 So.2d 161.
We likewise find merit in defendant’s alternative contention that water collected upon the roof of a building is “surface water”, damage from which, in this instance, would not be covered under the exclusionary clause of defendant’s policy. So far as we can determine the term “surface water” has never been interpreted by the Courts of this state. It has, however, been construed in numerous other jurisdictions. In 56 Am.Jur., verbo water, Sec. 65, it is stated:
“The term ‘surface water’ is used in the law of waters in reference to a distinct form or class of water which is generally defined as that which is derived from falling rain or melting snow, or which rises to the surface in springs, and is defused over the surface of the ground, while it remains in such defused state or condition * *
In construing the term “surface water”, the court in Bringhurst v. O’Donnell, 14 Del.Ch. 225, 124 A. 795, stated:
“The answer to this argument is that the main premise from which it starts is that ‘surface water’ is such water as reaches the ground or dirt, and that this premise is untenable. Under the appropriate title in Words and Phrases (original edition as well as Second Series) will be found numerous references to adjudicated cases from which it will appear that the phrase ‘surface water’ embraces waters derived from falling rain and melting snows. No case has been cited which holds that in order to become surface water the rains must fall, or the snows must melt upon the' soil of the earth. In the case of a building erected on land, the roof is to be regarded as an artificial elevation of the earth’s surface. When it intercepts the falling rain or snow, it therefore gathers surface waters.”
To the same effect see Nathason v. Wagner, 118 N.J.Eq. 390, 179 A. 466, and cases therein cited.
Our consideration of the cited authorities convinces us their reasoning is sound and *448 we adopt their interpretation of the term surface water. It would indeed be a strained interpretation to hold that surface water is confined to that portion of rain water which falls directly on the ground. Assuming, therefore, the damage to plaintiffs building was caused by water which collected on the roof because its run-off was impeded by wind, such damage would fall within the Water Exclusion Clause which does not cover wind driven surface water.
The judgment of the trial court is affirmed at appellant’s cost.
Affirmed.