STATE FARM FIRE AND CASUALTY COMPANY, Appellant (Defendant),

v.

Herb J. PAULSON, Appellee (Plaintiff).

Herb J. PAULSON, Appellant (Plaintiff),

v.

STATE FARM FIRE AND CASUALTY COMPANY, Appellee (Defendant).

Nos. 87–259, 87–260.

Supreme Court of Wyoming.

June 3, 1988.

John A. Sundahl of Godfrey, Sundahl & Jorgenson, Cheyenne, for State Farm Fire and Cas. Co.

Stanley K. Hathaway and Blair J. Trautwein of Hathaway, Speight & Kunz, Cheyenne, for Herb J. Paulson.

Before BROWN, C.J., THOMAS, CARDINE and MACY, JJ., and ROONEY, Retired Justice.

ROONEY, Retired Justice.

This appeal in Case No. 87–259, by State Farm Fire and Casualty company (hereafter referred to as "appellant") is from a judgment entered against appellant after a non-jury trial declaring that an insurance policy issued to Herb J. Paulson (hereafter referred to as "appellee") covered damage resulting from the entrance of water and hail into the basement of appellee's house after a severe storm. The basic issue presented on appeal is whether or not the trial court erred in declaring the existence of such coverage.

We reverse.

Uncontroverted are the facts that hail, followed by hail and rain, fell in Cheyenne on August 1, 1985; that the storm was severe; that hail broke sections of three basement windows on the east side of appellee's residence in Cheyenne; that water and hail, which were generated within a few blocks of the residence (a 62–acre drainage area), entered the basement through the windows; that the high water line was several inches above the basement and water completely filled the basement; that less water would have entered had the windows not been broken; and that the policy in question was in force at the time and provided in pertinent part:

"SECTION 1—LOSSES INSURED

"COVERAGE A—DWELLING

"We insure for accidental direct physical loss to the property described in Coverage A except as provided in SECTION I–LOSSES NOT INSURED.

"COVERAGE B—PERSONAL PROPERTY

"We insure for accidental direct physical loss to property described in Coverage B

caused by the following perils except as provided in SECTION I–LOSSES NOT INSURED:

\* \* \* \* \* \*

"2. Windstorm or hail. This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust. This limitation does not apply when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

\* \* \* \* \* \*

"11. Weight of ice, snow or sleet which causes damage to property contained in a building.

\* \* \* \* \* \*

"SECTION I—LOSSES NOT INSURED

\* \* \* \* \* \*

"2. We do not insure under any coverage for loss (including collapse of an insured building or part of a building) which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: a) the cause of the excluded event; or b) other causes of the loss; or c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss:

\* \* \* \* \* \*

"c. Water Damage, meaning:

"(1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind."

█ An insurance policy is a contract (§ 26–15–101 et seq., W.S.1977).

"A policy of insurance is a contract between the insurer and the insured and construed in the same way. *Worthington v. State,* Wyo., 598 P.2d 796 (1979); *State Farm Mutual Automobile Insurance Co. v. Farmer's Insurance Group,* Wyo., 569 P.2d 1260 (1977). When terms of a contract are shown without any conflict of evidence, interpretation of a contract becomes a question of law for the court. *Engle v. First National Bank of*

*Chugwater,* Wyo., 590 P.2d 826 (1979). Paraphrased, and as said approvingly from a quote in *Horvath v. Sheridan–Wyoming Coal Co.,* 58 Wyo. 211, 131 P.2d 315 (1942), the interpretation of a written contract is a question of law for the court; but where the terms of a contract are conflicting or doubtful, it is for the jury to ascertain the intention of the parties and determine what the contract was under proper instructions. The interpretation and construction of a contract are done by the court as a matter of law. *Amoco Production Co. v. Stauffer Chemical Company of Wyoming,* Wyo., 612 P.2d 463 (1980). See also, *Goodman v. Kelly,* Wyo., 390 P.2d 244 (1964)." *Hursh Agency, Inc. v. Wigwam Homes, Inc.,* Wyo., 664 P.2d 27, 31 (1983).

The only exception to construing insurance contracts as other contracts are construed is the requirement that ambiguous language in an insurance contract is to be liberally construed in favor of the insured.

"When there are any ambiguities or uncertainties in the meaning of the language used in a policy, they must be strictly construed against the insurer who drafted the contract. *Wilson v. Hawkeye Casualty Co.,* 67 Wyo. 141, 215 P.2d 867, 874–875 (1950). However, if the language is clear and unambiguous, there is no room for the court to resort to a strict construction against the insurer, and the insurance policy must be interpreted according to the ordinary and the usual meaning of its terms. *McKay v. Equitable Assurance Society of U.S.,* [Wyo., 421 P.2d 166,] 168 [ (1966) ]; *Addison v. Aetna Life Insurance Company,* Wyo., 358 P.2d 948, 950 (1961); *Coit v. Jefferson Standard Life Ins. Co.,* 28 Cal.2d 1, 168 P.2d 163, 169–170 (1946); *Ostendorf v. Arrow Insurance Company,* [288 Minn. 491], 182 N.W.2d [190,] 192 [ (1970) ]." *Worthington v. State,* Wyo., 598 P.2d 796, 806 (1979).

█ The basic considerations for construing a contract are summarized in *Amoco Production Company v. Stauffer*

*Chemical Company of Wyoming*, Wyo., 612 P.2d 463, 465 (1980):

"Our basic purpose in construing or interpreting a contract is to determine the intention and understanding of the parties. *Fuchs v. Goe*, 62 Wyo. 134, 163 P.2d 783 (1945); *Shellhart v. Axford*, Wyo., 485 P.2d 1031 (1971); *Oregon Short Line Railroad Company v. Idaho Stockyards Company*, 12 Utah 2d 205, 364 P.2d 826 (1961). If the contract is in writing and the language is clear and unambiguous, the intention is to be secured from the words of the contract. *Pilcher v. Hamm*, Wyo., 351 P.2d 1041 (1960); *Fuchs v. Goe*, supra; *Hollabaugh v. Kolbet*, Wyo., 604 P.2d 1359 (1980); *Wyoming Bank and Trust Company v. Waugh*, Wyo., 606 P.2d 725 (1980). And the contract as a whole should be considered, with each part being read in light of all other parts. *Shepard v. Top Hat Land & Cattle Co.*, Wyo., 560 P.2d 730 (1977); *Rossi v. Percifield*, Wyo., 527 P.2d 819 (1974); *Shellhart v. Axford*, supra; *Quin Blair Enterprises, Inc. v. Julien Construction Company*, Wyo., 597 P.2d 945 (1979). The interpretation and construction is done by the court as a matter of law. *Hollabaugh v. Kolbet*, supra; *Bulis v. Wells*, Wyo., 565 P.2d 487 (1977); *Shepard v. Top Hat Land & Cattle Co.*, supra.

"If the contract is ambiguous, resort may be had to extrinsic evidence. *J.W. Denio Milling Co. v. Malin*, 25 Wyo. 143, 165 P. 1113 (1917); *Kilbourne–Park Corporation v. Buckingham*, Wyo., 404 P.2d 244 (1965). An ambiguous contract 'is an agreement which is obscure in its meaning, because of indefiniteness of expression, or because a double meaning is present.' *Bulis v. Wells*, supra, 565 P.2d at 490. Ambiguity justifying extraneous evidence is not generated by the subsequent disagreement of the parties concerning its meaning. *Homestake–Sapin Partners v. United States*, 10th Cir.1967, 375 F.2d 507."

The language of the contract quoted supra is not ambiguous.[1] It is plain and clear. It does not have a double meaning, nor is it indefinite or obscure in its meaning. It is definite in expression and can be understood in only one way. It has but a single meaning, and that meaning is not uncertain. It provides that there is no coverage for loss due to "water damage" as "water damage" is defined in the contract, i.e., that resulting from "flood, surface water, waves, tidal water, * * * or spray from any of these, whether or not driven by the wind." Appellee argues that the loss was caused by "rain"—which is not listed under the contract definition of "water damage" —and therefore coverage existed. Appellant argues that the loss was caused by "surface water" and therefore is within the contract exclusion. This resulting issue was accepted by the trial court as the crux of the case. It said, in the Declaratory Judgment, Findings of Fact and Conclusions of Law:

"The Court views the coverage issue in this case as follows: if the water which fell with and after the hail and [d]id the damage is considered 'rain', then there is coverage. If such water is considered 'flood' or 'surface water', there is no coverage * * *."

The trial court also recognized that contract language to be unambiguous—but it inconsistently concluded that the words "rain," "flood," and "surface water" were latently ambiguous. It said, in its second Conclusions of Law:

"While the policy language is not inherently ambiguous, it is ambiguous as applied to the extraordinary facts in this case because the terms 'rain', 'flood', and 'surface water', are not defined in the insurance policy. An examination of the

---

1. See definition of ambiguous contract in quotation from *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, 612 P.2d 465, and in *McArtor v. State*, Wyo., 699 P.2d 288 (1985); *Attletweedt v. State*, Wyo., 684 P.2d 812 (1984); *Matter of Estate of Reed*, Wyo., 672 P.2d 829 (1983); *Busch Development, Inc. v. City of Cheyenne*, Wyo., 645 P.2d 65 (1982); *State ex rel. Albany County Weed and Pest District v. Board of County Commissioners of County of Albany*, Wyo., 592 P.2d 1154 (1979); *DeHerrera v. Herrera*, Wyo., 565 P.2d 479 (1977); *County of Natrona v. Casper Air Service*, Wyo., 536 P.2d 142 (1975).

cases referred to in the February 2, 1987 letter decision reveal that the Courts have not necessarily agreed upon the 'plain' meaning to be given to 'flood', 'surface water' or 'rain'. Because the terms are not defined, the Court concludes that rain does not become surface water immediately after it hits the ground; rather it remains 'rain' (a non-excluded peril)."

We cannot accept this conclusion. A policy must be construed according to its plain language, giving to the words their common and ordinary meaning.

"[W]ords used will be given their common and ordinary meaning. 13 Appleman, Insurance Law and Practice, § 7402 (1943). * * * Absent ambiguity, there is no room for construction and the policy will be enforced according to its terms. *Addison v. Aetna Life Insurance Company*, Wyo., 358 P.2d 948, 950 [(1961)]. Neither will the language be 'tortured' in order to create an ambiguity. *Malanga v. Royal Indemnity Company*, 4 Ariz. App. 150, 418 P.2d 396, 399 [(1966)]; Appleman, Insurance Law and Practice, § 7384 (1943)." *McKay v. Equitable Life Assurance Society of the United States*, Wyo., 421 P.2d 166, 168 (1966).

It is true that "rain," "flood" and "surface water" are not further defined in the policy. But neither does it define "fire," "theft," "freezing" or other perils with common and ordinary meanings. "Rain" is ordinarily and commonly thought of as water falling from the sky. After it stops falling, one does not say that it is "raining" although there may still be wet sidewalks and streets, puddles of water resulting from the rain, or water running through gutters and elsewhere as a result of the rain. It is not common or usual to say in such instances that it is still raining.

This common and usual meaning is the same as that legally determined and used in the science of hydrology. In *Al Berman, Inc. v. Aetna Casualty & Surety Co.*, 216 F.2d 626, 628 (3rd Cir.1954), the court defined "rain" as:

" 'The condensed vapor of the atmosphere *falling* to the earth in drops large

enough to attain sensible velocity.' New Standard Dictionary." (Emphasis added.)

Expert witness Rechard testified at the trial:

"Q. Is there a distinction as a hydrologist, sir, and based upon your expertise in hydrology between rain and surface water?

"A. Yes, there is.

"Q. What is that distinction?

"A. Rain is the water falling from the atmosphere striking the surface of the earth, and surface water is water on the surface of the earth.

"Q. What happens after rain falls to the ground? Does it retain its characteristic as rain or does it become something else?

"A. It becomes either surface water or if it infiltrates it becomes underground water.

"Q. Is that a commonly accepted definition, as far as you know?

"A. As far as hydrology is concerned, yes.

"Q. That's one that is used—has been used for how many years? For as long as you can remember?

"A. As long as there has been the science of hydrology."

If, by definition, "rain" remains "rain" after it stops falling, then the water in streams and lakes, coming from household faucets, etc. is "rain" since it originated, partly at least, from water that fell from the sky.

In any event, the important determination to be made in this case is whether or not the damage was caused in whole *or in part* by "surface water." If the water which accumulated on the ground and entered the basement window was still "rain," then there is either no such thing as "surface water," or "rain" and "surface water" are synonymous. Obviously, there is such a thing as "surface water"—at least in the minds of the parties to the contract in which they used the term. And if the two terms are synonymous, then the exclusion provision of the policy for "sur-

face water" also applies to "rain," and there is no coverage.

Justice Blume, speaking for this court, defined "surface water" in *State v. Hiber*, 48 Wyo. 172, 44 P.2d 1005, 1008 (1935):

" 'Surface water,' it has been said, is that which is diffused over the surface of the ground, derived from falling rains and melting snows, and continues to be such, and may be impounded by the owner of the land, until it reaches some well-defined channel in which it is accustomed to, and does, flow with other waters; or until it reaches some permanent lake or pond, and it then ceases to be surface water and becomes the water of the water course, or a lake or a pond, as the case may be. Kinney on Irrigation, [ (2d Ed.) ] § 318; *Crawford v. Rambo*, 44 Ohio St. 279, 7 N.E. 429 [ (1886) ]; *King v. Chamberlin*, 20 Idaho[ ] 504, 118 P. 1099 [ (1911) ]."

At least some of the water which entered appellee's basement had diffused over the surface of the ground, was derived from falling rains, and had not reached a well-defined channel, lake or pond. It fit other plain meanings of surface water as reflected ante. The evidence established the fact that this kind of water entered the basement and caused the damage. There was no evidence to the contrary. Thus, a contrary finding could not be made. *M & M Welding, Inc. v. Pavlicek*, Wyo., 713 P.2d 236 (1986); *Alco of Wyoming v. Baker*, Wyo., 651 P.2d 266 (1982); *Clausen v. Boland*, Wyo., 601 P.2d 541 (1979); *Douglas Reservoirs Water Users Association v. Cross*, Wyo., 569 P.2d 1280 (1977).

Appellee, himself, testified:

"And then later on I had a city dump truck pick me up and leave me off a block away from my house over there. And I swam the rest of the way.

"Q. You mean swam? That you were flat with both your legs and your arms kicking?

"A. Right, right.

. . . .

"Q. How deep was the water at your— in the street right by your house?

"A. By the house?

"Q. Yes, right by the house?

"A. Oh, I would say maybe like oh, two and a half, three feet, something like that. Two and a half feet.

"Q. Can you describe it for me by reason of how tall you are or where it came up to you on your waist?

"A. Oh, up to about the beltline.

"Q. Came up to the beltline?

"A. A little bit, yes.

"Q. That's at the street by your house?

"A. At the street by my house.

"Q. Let's move up to the area around the house.

"A. Okay.

"Q. How deep was the water level at the house?

"A. Oh, I would say approximately maybe like oh, six inches above the, you know, where it went into the basement, you know, the side of the basement, that wall, six inches above. The whole area in there could have been maybe like 20 inches, something like that, 17.

\*     \*     \*     \*     \*     \*

"Q. Okay. And do I understand correctly that when you went in the house the water was not only from the basement but all the way through the joists and ceiling?

"A. Right.

"Q. And up onto the first floor?

"A. First floor about half an inch, maybe three-quarters.

"Q. Now, was that—As you came to the house that evening, as you swam to the house that evening, was the water moving at all?

"A. Yes.

"Q. In which direction was it moving?

"A. I'd say it was coming in from the north. Coming in from the north.

\*     \*     \*     \*     \*     \*

"Q. Now, Mr. Paulson, I would like to now ask you whether or not had it not been for the flood and the surface water you would have had the loss to your basement and its contents?

"A. Maybe a minimum amount maybe.

"Q. Just a minimum?

"A. Minimum."

Mr. Rechard testified:

"Q. So if we wouldn't have had the flood or surface water there is nominal if any damage to the basement and its contents, correct?

"A. That is my opinion."

There is testimony that some "rain" may have fallen directly into the basement through the broken windows without first hitting the ground and becoming "surface water." But there was no contradictory evidence to the fact that some of the water which entered the basement and contributed to the damage was "surface water" as defined in *State v. Hiber*, supra, and as such is commonly considered (see additional definitions ante).

Accordingly, the specific policy exclusions prevent coverage in this instance. That quoted supra from "SECTION I–LOSSES NOT INSURED" of the policy specifies that there is no coverage for loss caused by "surface water" or "flood," and (1) "We do not insure for such loss regardless of: a) the cause of the excluded event"; e.g., hail breaking a window and allowing the "surface water" or "flood" to enter; (2) "We do not insure for such loss regardless of: * * * b) other causes of the loss"; e.g., if the loss was also caused by "rain" *falling* into the basement through

the broken window, or if it was also caused by "hail"; and (3) "We do not insure for such loss regardless of: * * * c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss"; e.g., the loss was a result of the window being broken, "hail" and "rain" entering, together with "surface water" or "flood" entering—either at the same time or in sequence.[2]

Although the foregoing may be sufficient for a reversal of this matter, the second Conclusion of Law, supra, of the learned trial judge deserves additional comment.

Contrary to his statement therein that the cases referred to in his letter opinion "reveal that the Courts have not *necessarily* agreed upon the 'plain' meaning to be given to 'flood', 'surface water' or 'rain'," (emphasis added) a review of such cases reflects that they are in substantial agreement as to the meaning of these words. Of the sixteen cases there considered, three do not address those meanings;[3] five define "flood";[4] three of those defining flood also define "surface water,"[5] as do an additional seven;[6] and one considers the meaning of "rain."[7] Of course, the fact situation is not the same in all of these cases.

---

2. If a policy did not contain a sequential exclusion, as did this one, coverage would exist if an otherwise excluded peril resulted in the occurrence of a covered peril, such as non-covered peril of vandalism resulting in breakage of water pipes which caused covered peril of water damage.

3. *Franklin Packaging Company v. California Union Insurance Company*, 171 N.J.Super. 188, 408 A.2d 448 (1979), cert. denied 84 N.J. 434, 420 A.2d 340 (1980); *Fawcett House, Inc. v. Great Central Insurance Company*, 280 Minn. 325, 159 N.W.2d 268 (1968); *Unobskey v. Continental Ins. Co.*, 147 Me. 249, 86 A.2d 160 (1952).

4. *Bartlett v. Continental Divide Insurance Company*, Colo.App., 697 P.2d 412 (1984); *Ferndale Development Co., Inc. v. Great American Insurance Company*, 34 Colo.App. 258, 527 P.2d 939 (1974); *Mateer v. Reliance Insurance Co.*, 247 Md. 643, 233 A.2d 797 (1967); *Everett v. Davis*, 18 Cal.2d 389, 115 P.2d 821 (1941); *Poole v. Sun Underwriters Ins. Co. of New York*, 65 S.D. 422, 274 N.W. 658 (1937).

5. *Ferndale Development Co., Inc. v. Great American Ins. Co.*, supra; *Everett v. Davis*, supra; *Poole v. Sun Underwriters Ins. Co. of New York*, supra.

6. *Transamerica Insurance Company v. Raffkind*, Tex.Civ.App., 521 S.W.2d 935 (1975); *Aetna Fire Underwriters Insurance Company v. Crawley*, 132 Ga.App. 181, 207 S.E.2d 666 (1974); *Hatley v. Truck Insurance Exchange*, 261 Or. 606, 495 P.2d 1196 on reh. from 261 Or. 606, 494 P.2d 426 (1972); *Sherwood Real Estate & Investment Company v. Old Colony Insurance Company*, La. App., 234 So.2d 445 (1970); *Richman v. Home Ins. Co. of N.Y.*, 172 Pa.Super. 383, 94 A.2d 164 (1953); *Urse v. Maryland Casualty Co.*, 58 F.Supp. 897 (D.C.N.D.1945); *Fenmode v. Aetna Casualty & Surety Co. of Hartford*, Conn., 303 Mich. 188, 6 N.W.2d 479 (1942).

7. *Goldfarb v. Maryland Casualty Co.*, 311 Ill. App. 568, 37 N.E.2d 376 (1941).

The policy exclusion prevented coverage if the damage resulted from a "flood." With reference to the five cases considered by the trial court which defined "flood," *Bartlett v. Continental Divide Insurance Company*, Colo.App., 697 P.2d 412 (1984); *Ferndale Development Co., Inc. v. Great American Insurance Company*, 34 Colo. App. 258, 527 P.2d 939 (1974); *Mateer v. Reliance Insurance Co.*, 247 Md. 643, 233 A.2d 797 (1967); *Everett v. Davis*, 18 Cal. 2d 389, 115 P.2d 821 (1941); *Poole v. Sun Underwriters Ins. Co. of New York*, 65 S.D. 422, 274 N.W. 658 (1937), only *Mateer v. Reliance Ins. Co.* has language which could make "flood" a consideration in this case. It states:

"Today we commonly speak of a cellar or basement being 'flooded' without regard to whether the water comes from the overflow of a stream, *from a hard downpour*, or from the bursting of pipes." (Emphasis added.) Id. at 799.

In each of the other four cases, "flood" is defined in a similar fashion: *Bartlett v. Continental Divide Insurance Company*, 697 P.2d at 413 states:

"Ordinarily, 'flood' means 'a body of water (including moving water) ... overflowing or inundating land not usually covered.' 36A C.J.S. Flood * * *."

And it notes that no distinction is made between natural and artificial causes.

*Everett v. Davis*, 115 P.2d at 823, and *Poole v. Sun Underwriters Ins. Co. of New York*, 274 N.W. at 600, define flood waters as

"those which escape from a stream or other body of water and overflow the adjacent territory."

*Ferndale Development Co., Inc. v. Great American Insurance Company*, 527 P.2d at 940, adopts the definition from 5 Appleman, Insurance Law and Practice § 3145 at 462 (1970):

" ' "Flood waters" are those waters above the highest line of the ordinary flow of a stream, and generally speaking they have overflowed a river, stream, or natural water course and have formed a continuous body with the water flowing in the ordinary channel * * *.' "

These cases do not indicate material disagreement as to the plain meaning of the word "flood."

The meaning of "surface water" is of much more importance to this case since, as noted, if it caused the damage—even in part—there was no coverage under the policy. A review of the cases defining "surface water" and referred to or quoted from in the trial judge's opinion letter (see notes 5 and 6, supra) attribute the meaning to "surface water" substantially as it is defined by this court in *State v. Hiber*, supra.

*Transamerica Insurance Company v. Raffkind*, Tex.Civ.App., 521 S.W.2d 935, 939 (1975), defines "surface water" as

"natural precipitation coming on and passing over the surface of the ground until it either evaporates, or is absorbed by the land, or reaches channels where water naturally flows."

In *Richman v. Home Ins. Co. of N.Y.*, 172 Pa.Super. 383, 94 A.2d 164, 166 (1953), quoting *Fenmode v. Aetna Casualty & Surety Co. of Hartford, Conn.*, 303 Mich. 188, 6 N.W.2d 479, 481 (1942), it states:

"[S]urface waters are commonly understood to be waters on the surface of the ground, usually created by rain or snow, which are of a casual or vagrant character, following no definite course and having no substantial or permanent existence."

*Urse v. Maryland Casualty Co.*, 58 F.Supp. 897, 899 (D.C.N.D.1945) accepted two definitions of surface water, one from the Supreme Court of Appeals of West Virginia:

" 'Surface water is water of casual, vagrant character, oozing through the soil, or diffusing and squandering over or under the surface, which, though usually and naturally flowing in known direction, has no banks or channel cut in the soil; coming from rain and snow, and occasional outbursts in time of freshet, descending from mountains and hills, and inundating the country; and the moisture of wet, spongy, springy, or boggy land. For obstructing or diverting surface water, though damaging another,

the party is not liable.' *Neal v. Ohio River R. Co.*, 47 W.Va. 316, 34 S.E. 914, Pt. 2 Syl."

The other definition was from Kinney on Irrigation and Water Rights, § 318 at 516 (1912):

"' "Surface" water may be defined as water on the surface of the ground, the source of which is so temporary or limited as not to be able to maintain for any considerable time a stream or body of water having a well-defined and substantial existence.' " 58 F.Supp. at 899.

*Poole v. Sun Underwriters Ins. Co. of New York*, 274 N.W. at 660 also used this definition from Kinney, together with that set forth supra by *Richman v. Home Ins. Co. of N.Y.*, 94 A.2d at 164, and *Fenmode v. Aetna Casualty & Surety Co. of Hartford*, Conn., 6 N.W. at 479.

*Sherwood Real Estate & Investment Company v. Old Colony Insurance Company*, La.App., 234 So.2d 445, 447 (1970) states:

"In 56 Am.Jur., verbo water, Sec. 65, it is stated:

"'The term "surface water" is used in the law of waters in reference to a distinct form or class of water which is generally defined as that which is derived from falling rain or melting snow, or which rises to the surface in springs, and is defused over the surface of the ground, while it remains in such defused state or condition * * *.' "

*Everett v. Davis*, 115 P.2d at 823 states:

"Surface waters are those falling upon, arising from, and naturally spreading over lands produced by rainfall, melting snow, or springs. They continued to be surface waters until, in obedience to the laws of gravity, they percolate through the ground or flow vagrantly over the surface of the land into well defined watercourses or streams."

*Ferndale Development Co., Inc. v. Great American Insurance Company*, 527 P.2d at 940, again adopts the definition of "surface water" from 5 Appleman, Insurance Law and Practice, supra at 463, as:

"'water which is derived from falling rain or melting snow, or which rises to the surface in springs, and is diffused over the surface of the ground, while it remains in such a diffused state, and which follows no defined course or channel, which does not gather into or form a natural body of water, and which is lost by evaporation, percolation, or natural drainage.' "

*Aetna Fire Underwriters Insurance Company v. Crawley*, 132 Ga.App. 181, 207 S.E.2d 666, 668 (1974) states that "surface water"

"is used as a part of a series of contingencies all of which have in common the property that they comprise water flowing on the surface of the ground at the time they enter the home of the insured."

And finally, in *Hatley v. Truck Insurance Exchange*, 261 Or. 606, 495 P.2d 1196, 1197 (1972), the court said:

"The term 'surface water,' particularly when used in conjunction with flood, waves, and tidal water, was intended to mean water 'diffused over the surface of the ground, derived from falling rains or melting snows.' *Price v. Oregon Railroad Co.*, 47 Or. 350, 358, 83 P. 843, 846 (1906)."

The case of *Goldfarb v. Maryland Casualty Co.*, 311 Ill.App. 568, 37 N.E.2d 376, 377 (1941) referred to in the opinion letter of the trial court did not define "rain," but did comment that "[i]t is difficult to say where the line of demarcation lies between rain and surface water." In finding that there was coverage under a policy providing coverage for the peril of rain, the court said that "[t]here is no evidence that there was any water lying on the ground, in the area * * * of the defective door," and that the plaintiffs' theory "is that the rain coming between the two buildings, and through the fire escape, fell directly before and through the defective door of plaintiffs' premises."

These cases do not indicate a disagreement among the courts as to the meaning of the word "flood," "surface water" and "rain" sufficient to cloud the plain and ordinary meaning of them. Particularly with reference to "surface water," it is

difficult to understand how an item can be more plainly labeled. It is water on the surface, other than in streams, lakes and ponds. The parties, as reasonable people, must have attached this plain meaning to the words in the policy. The words "surface water" have the common meaning attributed to them by this court in *State v. Hiber,* supra.

Accordingly, and mindful of the following admonishment in *Worthington v. State,* 598 P.2d at 807, we hold that appellee's damages were not covered by his policy with appellant:

"[A] court [is restrained] from liberally and unreasonably construing an insurance contract to permit a strained or unnatural interpretation in order to find coverage for innocent victims who are subjects of enormous sympathy. Otherwise, the effect would be to bind an insurer to a risk that was not contemplated and for which it was not paid. *D'Angelo v. Cornell Paperboard Products, Co.,* 59 Wis.2d 46, 207 N.W.2d 846, 848 (1973)."

Case No. 87–259 is reversed. Since such reversal makes moot the issue in the cross-appeal of Herb J. Paulson in Case No. 87–260,[8] the trial court's holding in that case is affirmed.

CARDINE, J., filed a dissenting opinion.

CARDINE, Justice, dissenting.

I dissent.

I would find appellant's insurance policy ambiguous. In Coverage B, it affords insurance against loss or damage caused by hail and rain that enter through an opening caused by the direct force of hail. Then § 1 of the policy voids that coverage completely by providing that a loss is not covered if caused partly by rain entering directly and partly by rain which has become surface water. It would be a rare occurrence in which some rain did not, as appellant claims, become surface water and enter the

opening. It would seem that the parties must have intended to provide insurance coverage for something, otherwise why write into the policy all of the provisions concerning loss from windstorm, hail, rain, snow, sleet, sand or dust.

Coverage B provides as follows:

"We insure for accidental direct physical loss * * *.

    *     *     *     *     *     *

"2. * * * when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening."

The policy then provides, under SECTION 1—LOSSES NOT INSURED:

"We do not insure under any coverage for loss * * * which would not have occurred in the absence of one or more of the following excluded events. * * * (1) flood, surface water * * *."

"We do not insure for such loss regardless of: * * * (c) whether other causes acted concurrently or in any sequence with the excluded * * * loss."

The undisputed evidence in this case was that hail broke out basement windows and that hail and rain entered directly through the window opening causing some damage to the property. At this point in the occurrence, the damage was clearly covered by the policy, for it was hail damage that caused "an opening in a * * * wall" of the building and the rain and hail entered through the opening. Appellant even concedes that the broken windows are covered damage under the insurance policy, although at the time of argument such damage was unpaid.

The insurance coverage seemingly provided by Coverage B of the insurance policy then is claimed excluded by SECTION 1—LOSSES NOT INSURED. The effect of a literal interpretation of the exclusionary clause in § 1 is that the policy provides no coverage at all for damage caused by rain, for appellant contends that as soon as the rain settles upon some surface, it be-

8. The issue argued by Mr. Paulson in Case No. 87–260 is: "Under the circumstances of this case, State Farm's denial of coverage was unrea-sonable or without cause, thus entitling Mr. Paulson to interest and attorney fees pursuant to W.S. § 26–15–124."

comes surface water. And if any of that surface water enters through an opening caused by hail or wind and it, in combination with rain or hail entering directly, causes damage, it is not covered. For example, assume that hail damage caused an opening in a roof, rain entered directly through the opening causing damage, but some of the rain which fell on the roof collected, ran down the roof and into the opening causing additional damage. Under the literal language of the policy, there would be no coverage for the loss and damage that occurred, for the rain that had collected on the roof would be surface water, and it, in combination with rain entering directly and causing the total damage, is excluded under § 1. I cannot accept that as the intent of the parties in writing this policy.

Appellant argued that rain did not become surface water until it fell to the ground. I do not find that interpretation in the policy. At least we must agree that what is surface water and when it becomes surface water was ambiguous insofar as such term was used in this insurance policy. I would hold it was the intent of the parties to provide some kind of coverage for damage caused by hail and rain. An ambiguous contract must be most strongly construed against the drafter of the instrument, in this case appellant. For this reason I would affirm the decision of the district judge. And, in any event, I would hold that the insurance policy at least covered the damage caused by the hail and by the rain that entered, not as surface water, but directly through the opening itself. Appellant contends that the major damage was caused by surface water. That at least is a concession that lesser damage was caused by rain and by hail entering directly. Without doubt, this damage was covered under the policy.