[1] The Complaint incorrectly identified Defendant as "USSA Insurance Company." The proper designation should have been USAA (United Services Automobile Association). USAA correctly identified itself as USAA in its answer.
 DECISION
Following a non-jury trial in this insurance claim case, the Court will now issue its Decision. In 1996, Plaintiff, Edmund S. Pomon,pro se (Plaintiff), submitted a claim to Defendant United Services Automobile Association (USAA or Defendant) for $27,300 in flood damage to his basement and $800 in damage to his roof. The Defendant formally denied the claim in 2002. The Plaintiff then filed the instant action on July 10, 2006. The Defendant filed a counterclaim for declaratory relief. Jurisdiction is pursuant to G.L. 1956 § 8-2-14 and Super. R. Civ. P. 52.
 I Facts and Travel
In his Complaint, Plaintiff alleged that the flood and roof damage had been caused by a tree that was pushed by the wind into his roof. The damage allegedly occurred in May, June, and July of 1996. Insurance assessor Robert St. Jean (Mr. St. Jean) inspected the damage on several occasions, and in May 2002, USAA formally denied the claim based upon language in the insurance policy that excluded loss caused directly or indirectly by surface water damage. *Page 2 
A non-jury trial was held on April 3, 2009. Prior to the hearing, Defendant submitted a Motion for Summary Judgment, alleging that the action was untimely both according to the policy and according to G.L. 1956 § 27-5-3. The Court did not rule on the motion and will now treat it as a Super. R. Civ. P. 52(c) Motion for Judgment as a Matter of Law. The trial witnesses consisted of Plaintiff and Mr. St. Jean. The content of their testimony will be discussed below.
 II Standard of Review
In a non-jury case, great weight and deference are given to the trial justice's findings of fact. See Cathay Cathay, Inc. v. Vindalu,LLC, 962 A.2d 740, 745 (R.I. 2009). Thus, a judgment "will be reversed on appeal when it can be shown that the trial justice misapplied the law, misconceived or overlooked material evidence or made factual findings that were clearly wrong." Town of West Greenwich v. A. CardiRealty Associates, 786 A.2d 354, 357-58 (R.I. 2001) (citing ForteBrothers, Inc. v. Ronald M. Ash Associates, Inc., 612 A.2d 717, 721
(R.I. 1992)).
Rule 52(a) provides in pertinent part:
 In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58 . . . It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence or appear in an opinion or memorandum of decision filed by the court.
With respect to Rule 52, it is well established that a trial justice may "enter judgment against a party who `has been fully heard on an issue' in a nonjury trial, [when] `. . . the court finds against the party on that issue.'" Cathay Cathay, Inc., 962 A.2d at 745 (quotingBroadley v. State, 939 A.2d 1016, 1020 (R.I. 2008)). In doing so, the "trial justice must assess the *Page 3 
credibility of witnesses and weigh the evidence presented by the nonmoving party." Id. In making such an assessment, "[t]he trial judge's impressions as he or she observes a witness and listens to testimony `are all important to the evidence sifting which precedes a determination of what to accept and what to disregard.'"Environmental Scientific Corp. v. Durfee, 621 A.2d 200, 206 (R.I. 1993) (quoting Laganiere v. Bonte Spinning Co., 103 R.I. 191, 196,236 A.2d 256, 258 (1967)). Accordingly, the "observations of live testimony necessarily enter into a determination of what the trial judge believes and disbelieves." Id.
However, "a trial justice is not required to view the evidence in the light most beneficial to the nonmoving party when considering a motion for judgment as a matter of law." Id. Instead, any "[s]uch . . . judgment shall be supported by findings of fact and conclusions of law as required by subdivision (a) of this rule." Super. R. Civ. P. 52(c).
 III Analysis
The Plaintiff maintains that he is entitled to insurance proceeds for damage to his home caused by heavy wind and rainfall that allegedly pushed a tree into his roof thereby causing flooding in his basement. The Defendant maintains the action is time-barred. The Defendant further asserts that the policy does not cover damage caused by surface water because, assuming the suit was timely filed, the water damage exclusion precludes Plaintiff's claim for flood damages.
Insurance policy terms are interpreted "according to the same rules of construction governing contracts." Gregelevich v. ProgressiveNorthwestern Ins. Co., 882 A.2d 594, 595 (R.I. 2005) (Mem.) (quotingTown of Cumberland v. Rhode Island Interlocal Risk ManagementTrust, Inc., 860 A.2d 1210, 1215 (R.I. 2004)). Thus, *Page 4 
 [t]he rights and liabilities of the parties to an insurance contract are to be ascertained in accordance with the terms as set forth therein. When affording the terms of the policy their plain and ordinary meaning, this Court looks not to what the insurer subjectively intended, but rather [to] what the ordinary reader and purchaser would understand [the terms] to mean. Finally, this Court has held that a limitations period in an insurance policy is a term to which the parties are specifically bound. National Refrigeration, Inc. v. Travelers Indem. Co. of America, 947 A.2d 906, 909-10 (R.I. 2008) (internal citations and quotations omitted);
see also Donahue v. Hartford Fire Ins. Co., 110 R.I. 603, 604,295 A.2d 693, 694 (R.I. 1972) ("A contractual limitation found in an insurance policy which prescribes a shorter time for the bringing of suit than the applicable statute of limitations, has been upheld if the interval between the loss and the mandatory institution of litigation is reasonable.") Furthermore, "[t]he reasonableness of the policy's contractual limitation of action is usually determined by looking at the prescribed time interval to see if it affords the insured an adequate opportunity to investigate his [or her] claim so that he [or she] can prepare for any controversy which might arise between him [or her] and his [or her] insurer." Id. (holding that "[t]he insureds' failure to comply with the one-year period contained in the policy in issue here bars this suit").
With respect to the enforceability of policy exclusions and limitations,
 The law in this area is well-settled. The burden of proof rests upon the party who asserts the affirmative of an issue and this burden never shifts. Generally speaking, the insured seeking to establish coverage bears the burden of proving a prima facie case, including but not limited to the existence and validity of a policy, the loss as within the policy coverage, and the insurer's refusal to make payments as required by the terms of the policy. The insurer then bears the burden of proving the applicability of policy exclusions and limitations in order to avoid an adverse judgment but only after the insured has sustained its burden and established its prima facie case. General Acc. Ins. Co. of America v. American Nat. Fireproofing, Inc., 716 A.2d 751, 757 (R.I. 1998).
With the foregoing in mind, the Court now will address the pertinent issues. *Page 5 
 A Timeliness of the Claim
In the instant matter, Defendant agrees that a valid homeowner's policy existed at the time that Plaintiff's damages allegedly occurred. Consequently, Plaintiff has proven his prima facie case and the burden shifts to Defendant to prove the applicability of policy exclusions and/or limitations. Accordingly, Defendant contends that the suit is untimely, and that even if timely filed, the claim for flood damage is precluded by the water damage exclusion.
Section 7 of the "CONDITIONS" portion of Plaintiff's insurance policy provides:
 Suit Against Us. No action can be brought against us unless you have:
 a. Given notice of the loss,
 b. Complied with all other policy provisions, and
 c. Started the action within one year after the date of the loss. Insurance Policy at 11.
In defining the term "action," Black's Law Dictionary states the following:
 An action has been defined to be an ordinary proceeding in a court of justice, by which one party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense. But in some sense this definition is equally applicable to special proceedings. More accurately, it is defined to be any judicial proceeding, which, if conducted to a determination, will result in a judgment or decree. Black's Law Dictionary 31 (8th ed. 2004) (quoting 1 Morris M. Estee, Estee's Pleadings, Practice, and Forms § 3 at 1 (Carter P. Pomeroy ed., 3d ed. 1885)).
Furthermore, "[t]he terms `action' and `suit' are nearly if not quite synonymous." Id. (quoting Edwin E. Bryant, The Law of Pleading Under theCodes of Civil Procedure 3 (2d ed. 1899)). A "suit" is defined in Black's Law Dictionary as "[a]ny proceeding by a party or parties in a court of law." Black's Law Dictionary 1475 (8th ed. 2004). Applying the foregoing to the instant *Page 6 
matter, the Court concludes that Plaintiff's claim constitutes a suit for purposes of Section 7 of the policy.
The record reveals that Plaintiff notified Defendant of flood and wind damage on June 9, 1996. His claim was formally denied on May 11, 2002. It was not until July 10, 2006, that Plaintiff filed the instant action/suit. Even if the one-year limitation contained in Plaintiff's policy could be construed as running from the date of the formal denial of Plaintiff's claim, that period expired on May 10, 2003. Consequently, because Plaintiff did not file the instant action until over four years after the date of the formal denial, his suit was time-barred as a matter of law.
 B Surface Water Exclusion
Assuming for the sake of argument that Plaintiff's suit had been timely filed, Defendant maintains that the policy's surface water exclusion prohibited recovery for the flood damage to Plaintiff's basement. The Plaintiff contends that the surface water is not applicable in the instant matter.
"Policies insuring property may contain exclusionary provisions for damage resulting from floods, tidal wave, seeping groundwater, and the like. Such provisions generally preclude recovery for damages arising from natural causes, not artificial devices." 43 Am. Jur. 2dInsurance § 448 (2003).
The policy at issue in this case contains the following exclusion:
 We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
 . . .
 c. Water Damage, meaning: *Page 7 
 (1)flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;
 (2)water which backs up through sewers or drains or which overflows from a sump well or similar device designed to drain water from the foundation area' or
 (3)water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building sidewalk, driveway, foundation, swimming pool or other structure. Direct loss by fire or theft resulting from water damage is covered. Insurance Policy at 8.
Our Supreme Court has defined the term "surface water" as "the water from rains, springs, or melting snows which lies or flows on the surface of the earth but does not form part of a well-defined body of water or a natural watercourse." Butler v. Bruno, 115 R.I. 264, 267, 341 A.2d 735,737 (R.I. 1975). The Court of Appeals in Georgia had occasion to apply a similar definition of surface water to a policy that provided coverage for loss caused by water backing up through sewers or drains, but which expressly excluded damages caused by surface water. See Hirschfield v.Continental Cas., Co., 405 S.E.2d 737 (Ga.App. 1991). The Court held that
 Whether in the present case the rainwater was diverted from the storm drain to the surface by an underground blockage, or it accumulated near the grate because the drain was otherwise obstructed, it is undisputed that the rainwater then flowed from the adjacent grate, across a surface area, and into the basement . . . the water entering the basement fits squarely within the "surface water" exclusion in the policy. Hirschfield, 405 S.E.2d at 738.
Furthermore, "rainfall that collects outside a building and subsequently flows into that building is `surface water' for purposes of the surface water exclusion." T.H.E. Ins. Co. v. Charles BoyerChildren's Trust, 455 F.Supp. 2d 284, 197 (M.D. Pa. 2006).
In State Farm Fire and Cas. Co. v. Paulson, 756 P.2d 764 (Wyo. 1988), three of the plaintiff's basement windows were damaged by hail. Thereafter water and hail entered the *Page 8 
basement. But for the broken windows, less water would have flooded into the basement. The
Wyoming Supreme Court held:
 At least some of the water which entered appellee's basement had diffused over the surface of the ground, was derived from falling rains, and had not reached a well-defined channel, lake or pond. . . . The evidence established the fact that this kind of water entered the basement and caused the damage. There was no evidence to the contrary. Thus, a contrary finding could not be made. Id. at 768 (Wyo. 1988).
In the present case, Plaintiff testified that he initially thought the water entered the basement "from the next-door neighbor's driveway because the water was up against my house about two inches. . . ." The Plaintiff conceded that in 1996, he told Defendant that the water seeped through the basement walls. Thereafter, Plaintiff stated that the damaged gutters caused the water to flow down the side of the house into the window well and then up over the concrete paneling and into the basement.
The Defendant's insurance assessor, Mr. St. Jean, testified that a tree that had grown into the gutter was a contributing factor to the flooding because it had caused the water to flow down the side of the structure and in through the basement window. The record reveals that the basement window is located below ground level with a barrier around the well of the window.
It is undisputed that water entered Plaintiff's basement from the outside of the house. From the evidence in the record, the Court finds that rainfall gathered outside Plaintiff's house and was deposited along the wall and within the window well, where it would have combined with the water flowing down the wall from the gutter area. Whether the water entered Plaintiff's basement via the window well or through the walls is of no significance because the record reveals that rainwater had diffused over the surface of the ground and subsequently flowed into the house. It did not form part of a well-defined channel, lake, or pond. The rainwater *Page 9 
constituted "surface water" for purposes of the surface water exclusion. Consequently, as a matter of law, Plaintiff is precluded from recovering damages for the basement flooding.
 C Damage to the Roof and Gutter
Assuming, arguendo, that the action had been timely filed, the Court nevertheless concludes that Plaintiff did not prove that the damage to his roof and gutter was caused by a wind driven event. It is undisputed that a tree blocked a gutter, thereby causing water to flow down side of the house and into the basement. However, the parties contested what caused the tree to block the gutter. Mr. St. Jean opined that the tree grew into the gutter whereas Plaintiff asserted that a windstorm blew the tree into the gutter.
The Court finds that although Plaintiff was genuinely sincere when he testified that the tree was pushed into the gutter by a windstorm, his overall testimony concerning the cause of the flood and gutter damage was inconsistent to say the least and, ultimately, unpersuasive. He stated that he originally believed that the flood damage had been caused by runoff from a neighbor's driveway and that he unsuccessfully had sued that neighbor for compensatory damages. Part of Plaintiff's deposition testimony from that case was read in open court. It revealed that the tree had been in his yard for approximately twenty years and that Plaintiff had trimmed it at least three to four times in order to ensure that water flowed freely in the gutter.
The Plaintiff testified that the tree was four to five inches in diameter. He stated that he replaced part of the gutter that had been "smashed" by the tree and that he put a "block and tackle" up against the tree to prevent it from causing further damage. He further testified that he "undercut the tree" by about three inches in order to keep the tree away from the gutter. The Plaintiff's testimony was not credible. *Page 10 
The Court finds that Mr. St. Jean credibly testified that in May, 2002, the tree in question was approximately twelve to fifteen inches in diameter and that it had grown into the gutter in such a way that it actually wrapped around the gutter. Additionally, he credibly testified that by growing into the gutter, the tree caused an obstruction in the flow of rainwater. Mr. St. Jean stated that Plaintiff told him that the tree had been in the same condition since 1996 and that he had trimmed the branches growing towards the roof.
In support of his testimony, Mr. St. Jean proffered several photographs of the offending tree. The photographs reveal a large protruding tree branch that appears to be wrapped around a gutter. Indeed, a close-up photograph shows a distinct indentation in the branch where the branch is in contact with the gutter.
The Court concludes that in light of Mr. St. John's credible testimony concerning the growth pattern of the tree branch, coupled with the persuasive documentary evidence demonstrating the location of the tree branch vis-à-vis the gutter, Plaintiff has failed to carry his burden of proving that the damage to the gutter was caused by a windstorm pushing the tree into the gutter. Consequently, the Court concludes that Plaintiff's claim for damages to the gutter must be denied.
 IV Conclusion
In light of the foregoing, the Court concludes that Plaintiff failed to timely pursue his claim as a matter of law. Even if the claim was timely filed, the policy excluded the surface *Page 11 
water damage to the basement as a matter of law. The Plaintiff failed to prove that the damage to the gutter and resulting damage to the basement were caused by a windstorm pushing the tree into the gutter. Consequently, Plaintiff's claim is denied and dismissed. Counsel shall prepare an order consistent with this Decision.